**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

MARJORIE CHILDRESS,

               Plaintiff,                   Case No. 1:20-cv-00136-LF-JHR

v.

DESILVA AUTOMOTIVE SERVICES LLC,
PALMER ADMINISTRATIVE SERVICES
INC., VAJIRA SAMARARATNE and
PAYLINK PAYMENT PLANS LLC,

               Defendants.

## ANSWER AND AFFIRMATIVE DEFENSES

Defendants, DeSilva Automotive Services LLC ("DeSilva"), Palmer Administrative Services Inc. ("Palmer"), Vajira Samararante ("Ratne"), and PayLink Payment Plans LLC ("PayLink") (collectively referred to as "Defendants"), for themselves and no other party, and for its Answer to Plaintiff's Complaint, states as follows:

### Introduction

1.    Plaintiff Marjorie Childress ("Plaintiff") is a real person who may be contacted through her undersigned attorney.

**ANSWER:   Admit**

2.    Plaintiff brings this action in accordance with New Mexico state-law and the anti-harassment provisions of the Telephone Consumer Protection Act ("the "TCPA"). a federal statute enacted in 1991 in response to widespread outrage about the proliferation of intrusive, nuisance telemarketing. *See Mims v. Arrow Fin. Servs., LLC* 132 S. Ct. 740, 745 (2012).

**ANSWER:   Defendants admit that Plaintiff has filed a complaint in this court seeking damages and injunctive relief.  Defendants deny that Plaintiff is entitled to recover any damages or any other relief as against Defendants.**

3.     The TCPA is intended to protect consumer privacy by prohibiting certain unsolicited, autodialed and pre-recorded message telemarketing calls, and to provide for transparency by requiring that telemarketers identify themselves and who they are calling for during the calls.  The New Mexico Unfair Practices Act ("the UPA") is of similar design as it pertains to telephoning consumers.

**ANSWER:    The allegations of this paragraph state legal conclusions to which no response is required.  To the extent that a response is required, Defendants deny the allegations to the extent that they are inconsistent with or contrary to applicable law.**

4.     The TCPA established the National Do-Not-Call Registry ("the Registry"). The Registry allows people to list their telephone numbers and thereby indicate their instructions to NOT receive telephone solicitations.  *See* 47 C.F.R. §64.1200(c)(2).

**ANSWER:    The allegations of this paragraph state legal conclusions to which no response is required.  To the extent that a response is required, Defendants deny the allegations to the extent that they are inconsistent with or contrary to applicable law.**

5.     Telemarketers are required by law to subscribe to and comply with the Registry. 47 U.S.C. 227(C)(3)(F-G): 16 C

**ANSWER:    The allegations of this paragraph state legal conclusions to which no response is required.  To the extent that a response is required, Defendants deny the allegations to the extent that they are inconsistent with or contrary to applicable law.**

6.     Congress made a finding when it enacted the TCPA that "more than 300,000 solicitors call more than 18,000,000 Americans every day" *Federal Communications Commission ("FCC") Report and Order 03-153, July 3, 2003, ¶¶ 8 & 66* (hereinafter "FCC

03"). As of FCC 03 "the number of **daily calls** [had] increased five fold (to an estimated **104 million**) due in part to the use of new technologies such as predictive dialers." *Id.*

**ANSWER:**   **The allegations of this paragraph state legal conclusions to which no response is required.   To the extent that a response is required, Defendants deny the allegations to the extent that they are inconsistent with or contrary to applicable law.**

7.      "[U]nwanted robocalls and texts, both telemarketing and informational, top the list of consumer complaints received by" the FCC.   *See Omnibus TCPA* Order, GC Docket 02-278.   FCC 15-72, 2015 WI. 4387780 ¶ (July 10, 2015).[1]   Nearly 50% of all calls to cell phones are now robocalls.[2]

**ANSWER:**   **The allegations of this paragraph state legal conclusions to which no response is required.   To the extent that a response is required, Defendants deny the allegations to the extent that they are inconsistent with or contrary to applicable law.**

8.      The Omnibus TCPA Order of July 10, 2015 provides more detail at its paragraph 5:

> "Between 2010 and 2012, consumer complaints about calls to wireless phones doubled, to an average of over 10,000 complaints per month in 2012.   In 2013 and 2014, the Commission received roughly 5,9000 or 6,000 such complaints per month, lower than in 2011 and 2012, but still a substantial monthly total that is

---

[1]The FCC has defined "robocalls" as "calls that require consumer consent", including "calls made either with an automatic telephone dialing system ("autodialer") or with a prerecorded or artificial voice".   *Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*.   CG Docket No. 02-278.   Declaratory Ruling and Order released on 7/10/15, 30 FCC Red. 7961 ("FCC 15-72").  footnote 1.

[2]Separate Committee (US) on Commerce, Science and Transportation, Report 116-41 issued on 5/21/19 for the Telephone Robocall Abuse Criminal Enforcement and Deterrence Act, page 2 with citations.

persistently one of the top consumer concerns.  The Federal Trade

Commission (FTC) reports that it received "approximately 63,000

complaints about illegal robocalls each month" during the fourth

quarter of 2009, but that "[b]y the fourth quarter of 2012, robocall

complaints had peaked at more than 200,000 per month."

and at its paragraph 7:

"39 percent of adults were wireless-only in the second half of

2013, compared to fewer than three percent of adults at the

beginning of 2003."

**ANSWER:    The allegations of this paragraph state legal conclusions to which no response is required.  To the extent that a response is required, Defendants deny the allegations to the extent that they are inconsistent with or contrary to applicable law.**

9.    The TCPA established a private right of action to receive $500 for each violation of the statute's Subsection B or its implementing regulations. These statutory damages may be trebled by the Court for willful or knowing violations. 47 U.S.C. § 227(b)(3 ). The TCPA provides a separate cause of action for each call in violation of Subsection C or its implementing regulations. The Court may award statutory damages under Subsection C of up to $1500 for each violative call.  47 § 227(0(5).

**ANSWER:    The allegations of this paragraph state legal conclusions to which no response is required.  To the extent that a response is required, Defendants deny the allegations to the extent that they are inconsistent with or contrary to applicable law.**

**Jurisdiction and Venue**

10.    Plaintiff and her telephone were in the State of New Mexico at the time of the illegal telemarketing the subject of this Complaint that Defendants and/or their agents harassed her with. Plaintiff resides in Bernalillo County. Thus venue is proper.

**ANSWER:    Defendants are without sufficient knowledge or information to admit or deny the location and residence of Plaintiff or her telephone.  Defendants generally deny the remaining allegations in this paragraph.  Defendants specifically deny that venue is proper in the Second Judicial District, Bernalillo County, New Mexico, and that Defendants are subject to personal jurisdiction in the New Mexico.  Defendants also deny that they engaged in illegal telemarketing and that Defendants and their agents harassed her.  Defendants admit that after removal of this case pursuant to sections 28 U.S.C. 1331, 1441, and 1446 jurisdiction in federal court is proper.**

11.    Defendants do business within New Mexico because Defendants or their agents regularly, automatically, repeatedly telephone the phones of New Mexicans located within New Mexico for the purpose of advertising products and services. Defendants authorized and approved telemarketing to sell products and services throughout the State of New Mexico. By directing telemarketing phone calls into the forum state. Defendants made themselves subject to the specific personal jurisdiction of the courts of the forum state.

**ANSWER:    The allegations of this paragraph state legal conclusions to which no response is required. To the extent a response is required, Defendants deny the remaining allegations in this paragraph.**

12.    The TCPA was intended to give consumers re-dress even in their local small claims courts where they reside. See again for example *Mims v. Arrow Fin. Servs., LLC*, supra, 132 S.Ct. at 745-751.  This Court has subject matter jurisdiction.

**ANSWER:   The allegations state legal conclusions to which no response is required. Defendants deny the allegations in this paragraph to the extent that a response is required.**

13.     Defendant VAJIRA SAMARARATNE ("Ratne" or "Defendants") is a California resident who should be served the Court's Summons in this matter at 7718 Independence Ave. Canoga Park, CA or wherever he may be located.

**ANSWER:   Admit**

14.     Desilva Automotive Services, LLC ("Desilva or "Defendants") is a California limited liability company with its principal operations and place of business in Canoga Park, CA. Desilva may be served process by service on its manager RATNE.

**ANSWER:   DeSilva admits that it is a California limited liability company with its principal operations and place of business in Los Angeles County, CA.**

15.     Palmer Administrative Services Inc. ("Palmer" or "Defendants") is a Delaware limited liability company with its principal operations and place of business in New Jersey. Palmer may be served a Summons by service on its Delaware registered agent: Resident Agents Inc. at 8. The Green ste. R. Dover, DE 19901.

**ANSWER:   Palmer denies that it is a limited liability company.  The remaining allegations are admitted.**

16.     Paylink Payment Plans EEC ("Paylink" or "Defendants") is a Delaware limited liability company with its principal operations and place of business in Illinois. Paylink may be served a Summons by service on its Delaware registered agent:  The Corporation Trust Company at 1209 Orange St., Wilmington, DE 19801.

**ANSWER:   Admit**

17.     Desilva does business and operates under its assumed or trade name "ALLIED VEHICLE PROTECTION".   Desilva's business is to manage. direct. control and operate call-centers that market vehicle service contracts ("VSCs") by outbound telemarketing. Desilva's most recent Statement of Information Ratne filed for it with the California Secretary of State is attached hereto as **Exhibit 1** in support of this Complaint.[3]

**ANSWER:   Defendants admit that DeSilva operates under the fictitious business name of "Allied Vehicle Protection." Defendants admit that DeSilva provides call-center support for the sale of VSCs.   Defendants admit that Exhibit 1 is a copy of California Secretary of State records to the extent that it does conflict with the public records of the State of California.**

18.     Ratne is Desilva's principal real person member and manager and he dominates and controls Desilva. Ratne sets and establishes all Desilva's policies, practices and operations. Ratne controlled and directed Desilva's actions and inactions the subject of this Complaint.

**ANSWER:   Admit that Ratne is DeSilva's real person member and manager. DeSilva denies the remaining  allegations in this paragraph.**

19.     Desilva. at the direction and under the control of Ratne. is either directly operating its own call-center or has contracted with a marketing company to engage in call-center, autodialer telephone solicitations intended to sell Palmer's and Paylink's products and services.

**ANSWER:   Admit that DeSilva provides call center services for auto warranties. Defendants deny the remaining allegations of this paragraph including but not limited to the allegation that they engage in autodialer telephone solicitations.**

---

[3]Noting under TYPE OF BUSINESS:  "Call Center for auto warranties"

20.     Ratne approves and controls the contracts. agreements and operations for autodialing on Defendants' behalf and approves and authorizes payment to the persons who do the actual robocalling.

**ANSWER:     Admit that Ratne is DeSilva's real person member and manager. Defendants deny the remaining allegations in this paragraph to the extent that they mischaracterize Ratne's role as manager of DeSilva or implicate the existence of any agency relationship with Palmer.**

21.     Ratne designed controls and approved the standardized telemarketing messages and sales pitches directed at consumers in the robocalling including the robocalling that harrassed[*sic*] Plaintiff as described below.

**ANSWER:     Admit that DeSilva provides call center services for auto warranties. Defendants deny the remaining allegations in this paragraph**

22.     Ratne and Desilva have initiated or directed hundreds of thousands or millions of unlawful robocalls into the State of New Mexico, directed at New Mexico consumers. using telemarketing sales scripts that only identify the caller as "***National Dealer Services***" or "***Dealer Services***". Ratne and Desilva do not subscribe to the Registry and do not scrub their calling lists against the Registry's lists of 505 or 575 area code phone numbers.

**ANSWER:     Admit that Ratne is DeSilva's real person member and manager. Admit that DeSilva provides call center services for auto warranties.  Defendants deny the remaining allegations in this paragraph.**

23.     Ratne using Desilva to do so markets and sells vehicle service contracts provided, produced and administered by Palmer.

**ANSWER:   Admit that Ratne is DeSilva's real person member and manager. Admit that DeSilva provides call center services for auto warranties and vehicle service contracts some of which may be administered by Palmer.  Defendants deny the remaining allegations in this paragraph.**

24.   Paylink by agreement with Palmer and Desilva finances the purchase price or Palmer's VSCs sold to consumers by Desilva's telemarketing.

**ANSWER:   Admit that PayLink provides payment plans for vehicle service contracts.  Defendants deny the remaining allegations in this paragraph.**

25.   Desilva receives a fee or commission from Palmer and/or Paylink for each of Palmer's VSCs Desilva sells and Paylink finances.

**ANSWER:   Defendants admit that DeSilva is paid out of the proceeds of the sale of vehicle service contracts.  Defendants deny the remaining allegations in this paragraph, and specifically deny that DeSilva receives a fee or commission from PayLink. Palmer denies that it pays a fee or commission to DeSilva.**

26.   Paylink allows Desilva access to Paylink's information and operating systems so Desilva can sell VSCs with robocalling and financing. Desilva would not be able to sell any significant amounts VSCs without Paylink's financing and services.

**ANSWER:   Defendants deny the allegations in this paragraph.**

27.   Paylink allows Desilva to enter consumer information into Paylink's operational systems so Paylink can profit from the robocalling and Financing.

**ANSWER:   Defendants deny the allegations in this paragraph.**

28.   Paylink allows Ratne and Desilva to use its service marks in VSC transactions with consumers on behalf of Palmer, including the transaction with Plaintiff described in more

detail below, and as shown by the attached 2-page **Exhibit 2** in support of this Complaint ("Paylink Payment Plan Agreement").

>        **ANSWER:**     **Defendants deny the allegations in this paragraph.**

29.      Paylink approves and provides the financing forms and agreements to be used with consumers in Desilva's robocall transactions.

>        **ANSWER:**     **Defendants admit that PayLink provides an agreement to use with consumers.  Defendants deny the remaining allegations in this paragraph.**

30.      Paylink delegates to Ratne, Desilva and Palmer the ability to make a contract between robocalled consumers including Plaintiff using parameters set by Paylink, including Paylink's absolute control over whether and under what circumstances it would accept Plaintiff or any other robocalled consumer as a Customer.

>        **ANSWER:**     **Defendants deny the allegations in this paragraph.**

31.      Paylink has received, reviewed and continues to regularly receive and review numerous similar complaints from robocalled consumers about the products and services Paylink and Palmer provide. Many of these complaints have informed Paylink that the products and services were sold by robocalls. For example Paylink recently received and responded to a complaint the Better Business Bureau forwarded to it that stated in pertinent part:

> On several occasions PayLink Direct has been part of a scheme to extort monies from my elderly mother. First, in March 2019, PayLink along with its client, ******** **** *** pressured my mother into a auto service contract that was both unnecessary and unneeded. Pursuant to a letter dated April 25. 2019, the contract was cancelled, however, these companies illegitimately retained monies that were paid through a credit card. I demand that these monies (over $131.32) be refunded immediately. In the second case, Paylink along with ****** Administration pressured my mother into an unnecessary service contract through **unsolicited phone calls aimed at elderly persons**. They have charged my mother $148.75/mo. Letter dated October 28. 2019 has been sent

to terminate this contract. I demand that this contract he cancelled. any outstanding balance he extinguished and any monies received he properly refunded. In addition, PayLink needs to place my mother's name on its list of consumers whom it will not accept accounts.

**ANSWER:    Defendants are without sufficient knowledge or information to admit or deny to the allegations in this paragraph and on that basis deny them.**

32.     Paylink knows that many of the VSCs it chooses to finance are sold via unsolicited phone calls including robocalls. and that the sellers would not be able to sell the VSCs or even profitably engage in robocalling without the substantial assistance and support of Paylink's services and participation in the transactions with consumers who respond positively.

**ANSWER:    Defendants deny the allegations in this paragraph.**

33.     Paylink chooses to not exercise supervision over the marketers it allows to use its services and service marks. Instead, Paylink chooses to remain willfully or consciously ignorant of' whether or not the marketers to whom it assists with access to its information and operating systems, are complying with the Registry.

**ANSWER:    Defendants deny the allegations in this paragraph.**

34.     Paylink facilitates, condones and relics on the robocalling because it is personally enriched by and profits from the same.

**ANSWER:    Defendants deny the allegations in this paragraph.**

35.     Paylink controlled, controls, directs and directed Ratne and Desilva in the following manner without bothering to confirm whether Ratne and/or Desilva comply with the TCPA, the TSR and applicable state-laws: Paylink gave them access to Paylink's information and operating systems so Desilva can sell VSCs with robocalling and financing; Paylink allows them to enter consumer information into Paylink's operational systems: Paylink allows them to use Paylink's service marks in VSC transactions with consumers on behalf of Palmer; Paylink

11

approves and provides the financing forms and agreements to he used with robocalled consumers; Paylink delegates to Ratne. Desilva and Palmer the ability to make a contract between robocalled consumers and Paylink using parameters set by Paylink. including Paylink's absolute control over whether and under what circumstances it would accept any robocalled consumer as a customer.

**ANSWER:   Defendants deny the allegations in this paragraph.**

36.     Palmer does not engage in direct marketing of the VSCs it produces and administers. Palmer arranges for and relies on third-party sellers such as Ratne and Desilva to directly market its products and services.

**ANSWER:   Palmer admits that it does not engage in the direct marketing of VSCs.  The Defendants deny the remaining allegations in this paragraph.**

37.     In fact, in some jurisdictions Palmer is prohibited by law from engaging in direct marketing and is required to rely solely on third-party sellers such as Ratne and Desilva. For example California Insurance Code § 12810 expressly provides that "No person. other than a seller, shall sell or offer for sale a vehicle service contract to a purchaser". and "No obligor shall use a seller as a fronting company and no seller shall act as a fronting company."[4]

**ANSWER:   The allegations of this paragraph state legal conclusions to which no response is required.  To the extent that a response is required, Defendants deny the allegations in this paragraph.**

38.     Palmer has a legal duty is expected and is required to exercise control and supervision over its sellers to see that the sellers comply with the TCPA, the TSR and applicable state-laws.

---

[4]The statutes define "seller" to exclude VSC producers, administrators or obligors such as Palmer.

12

**ANSWER:     The allegations of this paragraph state legal conclusions to which no response is required.   To the extent that a response is required, Defendants deny the allegations in this paragraph.**

39.     Palmer has received, reviewed and continues to regularly receive and review numerous similar complaints from robocalled consumers about the products and services Palmer provide. Many of these complaints have informed Palmer that the products and services were sold by robocalls.

**ANSWER:     Defendants deny the allegations in this paragraph.**

40.     Palmer is also made aware that Ratne and Desilva use robocalling to sell its products and services when consumers make claims to Palmer. Some of these consumers describe how they acquired Palmer's products and services including the marketing methods that brought Palmer's products and services to their attention.

**ANSWER:     Defendants deny the allegations in this paragraph.**

41.     Palmer's standard form of VSC it authorized Ratne and Desilva to sell for it expressly, conspicuously states on almost every page "NO CLAIMS WILL BE PAID WITHOUT PRIOR AUTHORIZATION", and the contract-holders are directed to call Palmer directly for this prior authorization.

**ANSWER:     Admit to the extent that it does not conflict with Palmer's VSC form.**

42.     Palmer controlled. controls. directs and directed Ratne and Desilva in the following manner without bothering to confirm whether Ratne and/or Desilva complied with the TCPA, the TSR and applicable state-laws:  Palmer gave them access to its information and operating systems so Desilva can sell Palmer's VSCs with robocalling:  Palmer allows them to enter consumer information into Palmer's operations systems:   Palmer allows them to use

Palmer's name in VSC transactions with consumers on behalf of Palmer.  Palmer approves and provides the contract forms and agreements to be used with robocalled consumers:  Palmer delegates to Ratne and Desilva the ability to make a contract between robocalled consumers and Palmer using parameters set by Palmer, including Palmer's absolute control over whether and under what circumstances it would accept any robocalled consumer as a customer.

**ANSWER:**   **Defendants deny the allegations in this paragraph.**

43.     While it exercises control over Ratne and Desilva. Palmer knows or chooses to be consciously indifferent to the fact that the VSCs Desilva sells for it are sold via unsolicited phone calls including robocalls, that neither Ratne nor Desilva subscribe to or comply with the Registry, and that Desilva would not be able to sell the VSCs or even profitably engage in robocalling without the substantial assistance and support Palmer provides Desilva.

**ANSWER:**   **Defendants deny the allegations in this paragraph.**

44.     Palmer chooses to tolerate. condone and rely on Desilva s robocalling because it is personally enriched by and profits from the same.

**ANSWER:**   **Defendants deny the allegations in this paragraph.**

45.     Minimal oversight by Palmer would confirm for Palmer that Desilva manages and operates call-centers without complying with the Registry, the TCPA or the TSR.

**ANSWER:**   **Defendants deny the allegations in this paragraph.**

46.     Defendants gave and continue to give substantial assistance or support to each other while knowing. consciously avoiding knowing or being recklessly indifferent to the fact that they are all engaged in acts or practices that violate the TCPA, the TSR and applicable state telemarketing laws.

**ANSWER:**   **Defendants deny the allegations in this paragraph.**

14

47.     Defendants intentionally use robocalling because it allows for thousands of automated sales calls to he initiated in a very short period of time, but their sales representatives or telemarketers only need actually spend time on the phone with consumers who respond positively. Defendants thereby illegally shift the cost of aggravation and wasted time to the public at large and away from themselves where it belongs.

**ANSWER:    Defendants deny the allegations in this paragraph.**

**The Illegal Phone Calls to Plaintiff Defendants are Responsible For**

48.     Plaintiff's telephone is a wireless or cell phone assigned the number **505-410-8487**.

**ANSWER:    Defendants are without information sufficient to respond to this allegation, and therefore deny the allegations in this paragraph.**

49.     Desilva at the direction and under the control of Ratne, or their agents, have repeatedly called Plaintiff's wireless phone with an automatic telephone dialing system ("auto-dialer").

**ANSWER:    Defendants deny the allegations in this paragraph.**

50.     Plaintiff states all Defendants' calls to Plaintiff referred to above were made or initiated with an autodialer because whenever she answered one of these calls she was greeted by an artificial voice or pre-recorded message that told her her auto warranty was about to expire and she should press "1" to speak to a live telemarketer about it.  All these pre-recorded messages were the same.

**ANSWER:    The allegations of this paragraph state legal conclusions to which no response is required.  To the extent that a response is required, Defendants deny the allegations in this paragraph.**

15

51.    The use of artificial or pre-recorded voices to greet consumers who answer phone calls. is a tell-tale indicator of mass-marketing by automation as opposed to manual or human-made calls.  If a real person were manually dialing phone numbers, this actual human being would not just play a recording to consumers who answer the calls. A sales-person manually making calls would greet answering consumers themselves with their real voice.

**ANSWER:    Defendants deny the allegations in this paragraph.**

52.    The pre-recorded message that greeted Plaintiff when she answered Defendants' calls never gave Plaintiff any accurate identification or location information for any of the Defendants.

**ANSWER:    Defendants deny the allegations in this paragraph.**

53.    If Defendants' live telemarketers came on the line and Plaintiff actually spoke to them. or if they spoke to Plaintiff. the live telemarketers never identified the sponsor of the calls within fifteen (15) seconds of when Plaintiff answered the call or at any other time.  Instead they intentionally gave Plaintiff only fake names that could never he used to accurately identify or locate Defendants: "National Dealer Services" or "Dealer Services".

**ANSWER:    Defendants deny the allegations in this paragraph.**

54.    After months of repeated robocall harassment by Defendants, and on December 16, 2019 after Desilva caused yet another robocall to be directed at Plaintiff, Plaintiff pressed "1", spoke to a live telemarketer and, so she could actually identify Defendants, bought the VSC Defendants had been peddling.

**ANSWER:    Defendants deny the allegations in this paragraph.**

55.    Desilva took and made a charge on Plaintiff's credit card and soon thereafter Plaintiff received by regular USPS mail a VSC booklet that again identified Desilva and its

co-conspirators Paylink and Palmer.   **Exhibit 2** hereto is a portion of the booklet as is the attached 2-page **Exhibit 3** in support of this Complaint.

**ANSWER:   Defendants admit that DeSilva charged Plaintiff's credit card and sent Plaintiff a VSC booklet.  Defendants deny the remaining allegations in this paragraph.**

56.     Plaintiff's cell phone number referred to above that Defendants or their co-conspirators repeatedly robocalled, has at all relevant times been continuously listed on the National Do-Not-Call Registry ("the Registry").

**ANSWER:   Defendants deny the allegations in this paragraph.**

57.     Defendants do not subscribe to or comply with the Registry as required by law and could not care less that any particular phone number may be listed on the Registry.

**ANSWER:   Defendants deny the allegations in this paragraph.**

58.     Plaintiff never consented to being autodialed or robocalled by Defendants or their agents.

**ANSWER:   Defendants deny the allegations of this paragraph.**

59.     Plaintiff has never had any prior relationship with Defendants.

**ANSWER:   Defendants are without knowledge or information sufficient to respond to this allegation, and therefore deny the allegations in this paragraph.**

60.     Defendants' calls complained of herein aggravated and harrassed[*sic*] Plaintiff, wasted her time, invaded her privacy, disrupted her days, were an obnoxious nuisance, cost her money to identify Defendants and cost her electricity to re-charge her phone.

**ANSWER:   Defendants deny the allegations of this paragraph.**

61.     Defendants had the authority and responsibility to prevent or correct the unlawful telemarketing practices that are the subject of this Complaint.

**ANSWER:     Defendants deny allegations of this paragraph.**

62.     Defendants formulated, directed, controlled and participated in the unlawful telemarketing practices that are the subject of this Complaint.

**ANSWER:     Defendants deny the allegations of this paragraph.**

63.     Defendants' conduct set forth herein and directed at Plaintiff in New Mexico was knowing and willful.

**ANSWER:     Defendants deny the allegations of this paragraph.**

64.     Defendants' conduct set forth herein and directed at Plaintiff in New Mexico was intentional, conscious, deliberate and volitional.

**ANSWER:     Defendants deny the allegations of this paragraph.**

65.     All the calls to Plaintiff the subject of this Complaint occurred within a single 12-month time period.

**ANSWER:     Defendants are without knowledge or information sufficient to respond to this allegation, and therefore deny the allegations in this paragraph.**

**Defendants' Direct or Vicarious Liability**

66.     For 25 years now the FCC has made clear that "the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *In the Matter of Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 10 F.C.C. Red. 12391, 12397 ¶ 13 (1995).

**ANSWER:     The allegations of this paragraph state legal conclusions to which no response is required.   To the extent that a response is required, Defendants deny the allegations to the extent that they are inconsistent with or contrary to applicable law.**

67.     In 2013 the FCC explained again in detail that a defendant "may he held vicariously liable under federal common law principles of agency for violations of either section

18

227(b) or section 227(c) that are committed by third-party telemarketers." *In the Matter of the Joint Petition Filed by Dish Network, LLC*, 28 F.C.C. Red. 6574 (2013). Both actual and apparent authority, and ratification can be a basis for a finding of vicarious liability. *Id*. at 6586 ¶ 34.

**ANSWER:** **The allegations of this paragraph state legal conclusions to which no response is required. To the extent that a response is required, Defendants deny the allegations to the extent that they are inconsistent with or contrary to applicable law.**

68. The FCC has instructed that defendants may not avoid liability by outsourcing telemarketing:

> [A]llowing the seller to avoid potential liability by outsourcing its telemarketing activities to unsupervised third parties would leave consumers in many cases without an effective remedy for telemarketing intrusions. This would particularly be so if the telemarketers were *judgment proof, unidentifiable, or located outside the United States, as is often the case*. Even where third-party telemarketers are identifiable, solvent, and amenable to judgment  limiting liability to the telemarketers that physically places the call would make enforcement in many cases substantially more expensive and less efficient, since consumers (or law enforcement agencies) would be required to sue each marketer separately in order to obtain effective relief. As the FTC noted, because "[s]ellers may have thousands of 'independent' marketers, suing one or a few of them is unlikely to make a substantive difference for consumer privacy.

May 2013 FCC Ruling, 28 FCC Red at 6588 (¶ 37) (internal citations omitted).

**ANSWER:** **The allegations of this paragraph state legal conclusions to which no response is required. To the extent that a response is required, Defendants deny the allegations to the extent that they are inconsistent with or contrary to applicable law.**

69. The FCC has rejected a narrow view of TCPA liability, including the assertion that liability requires a finding of formal agency and immediate direction and control over the third-party who placed the telemarketing call. *Id.* at 6587 n. 107.

19

**ANSWER:    The allegations of this paragraph state legal conclusions to which no response is required.    To the extent that a response is required, Defendants deny the allegations in this paragraph.**

70.    A direct connection exists between all Defendants herein and the robo-calls complained of by Plaintiff because the mho-calls were directly made on behalf of Defendants so they could all profit from a common enterprise in which they all substantially participated. Plaintiff acquired the originals of Exhibits 2 and 3 hereto as a direct result of the unlawful robocalls to her the subject of this Complaint.

**ANSWER:    Defendants deny the allegations of this paragraph.**

71.    "As the FTC has explained in its Compliance Guide, 'taking deliberate steps to ensure one's own ignorance of a seller or telemarketer's Rule violations is an ineffective strategy to avoid liability.'" *FTC v. Chapman*, 714 F.3d 1211, 1216-1219 (10th Cir. 2013).

**ANSWER:    The allegations of this paragraph state legal conclusions to which no response is required.    To the extent that a response is required, Defendants deny the allegations to the extent that they are inconsistent with or contrary to applicable law.**

72.    Desilva is directly liable and responsible for the phone calls at issue because it actually made or initiated the calls to Plaintiff or it substantially participated.

**ANSWER:    Defendants deny the allegations of this paragraph.**

73.    Ratne, Paylink and Palmer arc vicariously liable for the calls complained of by Plaintiff herein because they:

a)    authorized Desilva or its agents to initiate the phone calls;

b)    directly or indirectly controlled the persons \\ ho actually made or initiated the calls;

c)      allowed the telemarketers access to information and operating systems within Defendants' control for the purpose of selling goods and services, without which the telemarketers would not have been able to sell the goods and services with their auto-dialing;

d)      allowed the telemarketers to enter consumer information into Defendants' sales or operational systems;

e)      approved, wrote, reviewed or participated in developing the telemarketing sales scripts;

f)      Defendants reasonably should have known or consciously avoided knowing that the actual telemarketers were violating the law and Defendants failed to take effective steps within their power to require compliance: OR

g)      Defendants gave substantial assistance or support to the other Defendants and each other while knowing. consciously avoiding knowing. or being recklessly indifferent to the fact that Desilva or its agents were engaged in acts or practices that violated the TCPA, the UPA and/or TSR.

**ANSWER:   Defendants deny the allegations of this paragraph and all of its subparts.**

74.      Desilva or its agents apparently had authority from Palmer and Paylink to engage in the robocalling at issue because after it sold Plaintiff services offered by Palmer Plaintiff received a VSC from Palmer and was informed she had a payment agreement with Paylink.

**ANSWER:   Defendants deny the allegations of this paragraph.**

75.      Palmer and Paylink ratified the robocalls to Plaintiff described above because they accepted and intended the benefits to them of the calls while knowing or consciously

avoiding knowing their telemarketer-agents were autodialing cell phones and using artificial or prerecorded voices messages in unsolicited calls to cell phones.

**ANSWER:    Defendants deny the allegations of this paragraph.**

76.    Pay link is additionally vicariously liable for and subject to all Plaintiff's claims against Desilva and Palmer pursuant to the FTC Holder Rule, 16 C.F.R. § 433.2.[5]

**ANSWER:    Defendants deny the allegations of this paragraph.**

77.    Plaintiff required financing for the transaction. which Palmer and Desilva arranged for Paylink to provide.

**ANSWER:    Defendants lack knowledge or information sufficient to admit or deny whether "Plaintiff required financing," and deny the remaining allegations in this paragraph.**

78.    The VSC Plaintiff bought so she could identify the Defendants, is a consumer credit contract.

**ANSWER:    Defendants lack knowledge or information sufficient to admit or deny as to the reason Plaintiff purchased a VSC and on that basis deny the allegation.  The remaining allegations state legal conclusions to which no response is required.  To the extent that a response is required, Defendants deny the allegations in this paragraph.**

79.    Paylink is the holder of the consumer credit contract and is financing the transaction.

**ANSWER:    This paragraph states legal conclusions to which no response is required.  To the extent that a response is required, Defendants deny the allegations in this paragraph.**

---

[5]See generally *Jaramillo v. Gonzales*, 2002-NMCA-072, regarding the FTC holder rule.

FIRST SET OF CLAIMS FOR RELIEF – Violations of the TCPA's Subsection B

80.     The foregoing acts and omissions of Defendants or their agents on their behalf constitute multiple violations of 47 U.S.C. § 227(b) and its implementing regulations.

**ANSWER:     Defendants deny the allegations in this paragraph.**

81.     Plaintiff is entitled to and should be awarded against Defendants $500 in damages for each and every violation of the TCPA's Subsection B and its implementing regulations. Because Defendants' conduct set forth above was knowing and/or willful Plaintiff is entitled to and should be awarded treble damages of up to $1,500 for each and every violation.

**ANSWER:     Defendants deny the allegations in this paragraph.**

SECOND SET OF CLAIMS FOR RELIEF - Violations of the TCPA's Subsection C

82.     Defendants or Defendants; agents on Defendants' behalf made telephone solicitations to Plaintiff more than once within 12 months despite the fact her phone number Defendants or their agents called has been continuously listed on the Registry at all relevant times.

**ANSWER:     Defendants are without knowledge or information sufficient to admit or deny these allegations, and therefore deny the allegations in this paragraph.**

83.     For each or Defendants' calls to Plaintiff the subject of this Complaint. Plaintiff should recover up to an additional $1500 pursuant to 47 U.S.C. § 227(c).

**ANSWER:     Defendants deny the allegations in this paragraph.**

COMMON-LAW CLAIMS

84.     Plaintiff hereby sues Defendants for trespass to chattels and liar their civil conspiracy to direct an illegal telemarketing campaign into the State of New Mexico and to Plaintiff in particular.

**ANSWER:   Defendants admit that Plaintiff has sued Defendants.   Defendants deny the remaining allegations in this paragraph.**

85.     As set forth and described above, Defendants' conduct was knowing, willful, wanton, reckless, intentional and/or grossly negligent with conscious or deliberate disregard of Plaintiff's right to not be subjected to Defendants' illegal harassment.

**ANSWER:   Defendants deny the allegations in this paragraph.**

86.     Plaintiff' should have and recover judgment against Defendants for all her actual damages or all her statutory damages, and for an amount of nominal plus exemplary damages sufficient to set an example and deter in the future the conduct complained of by Defendants or others.

**ANSWER:   Defendants deny the allegations in this paragraph.**

<u>FOURTH SET OF CLAIMS FOR RELIEF – UPA Violations</u>

87.     Plaintiff hereby. brings this action pursuant to the New Mexico Unfair Practices Act ("the UPA") to recover her statutory damages for each violation of the UPA and her attorney fees. As set forth above Defendants' conduct was knowing and/or willful therefore Plaintiff is entitled to and should be awarded treble her statutory damages.

**ANSWER:   Defendants deny the allegations in this paragraph.**

88.     Each call to Plaintiff from Defendants the subject of this matter was a distinct violation of NMSA §57-12-22(A) and §57-12-22(C)(1).

**ANSWER:   Defendants deny the allegations in this paragraph.**

89.     Each call to Plaintiff from Defendants the subject of this matter that she answered was an additional distinct violation of NMSA §57-12-22(B)(1).

**ANSWER:   Defendants deny the allegations in this paragraph.**

90.     Each call to Plaintiff from Defendants the subject of this matter was an actionable unfair or deceptive trade practice because each call violated § 310.4 of the Telemarketing Sales Rule.

**ANSWER:     Defendants deny the allegations in this paragraph.**

91.     Ratne, Palmer and Paylink additionally distinctly violated the UPA because pursuant to 16 C.F.R. §310.3(b):

> "It is a deceptive telemarketing act or practice and a violation of this Rule for a person to provide substantial assistance or support to any seller or telemarketer when that person knows or consciously avoids knowing that the seller or telemarketer is engaged in any act or practice that violates §§310.3(a), (c) or (d), or §310.4 of this Rule."

**ANSWER:     Defendants deny the allegations in this paragraph.**

## Affirmative Defenses

Defendants have not yet had the opportunity to investigate or engage in discovery regarding the Plaintiff's Complaint and may rely on the following affirmative and other defenses that discovery will prove relevant.

1.     Plaintiff lacks Article III standing under the United States Constitution.

2.     The Court lacks personal jurisdiction over Defendants.

3.     Plaintiff consented to the conduct alleged in the Complaint.

4.     Plaintiff's claims under the TCPA are barred by the First Amendment to the United States Constitution because, *inter alia*:

      a.     the TCPA, as applied in this case, is an impermissible restraint on commercial speech in that it does not serve a significant government interest, does not directly advance any government interest asserted, and restricts commercial speech that is neither misleading nor in service of unlawful activity more than necessary; and

      b.     the FCC's interpretation of an ATDS is unconstitutionally vague.

5.     Plaintiff's claims are barred, in whole or in part, by the doctrine of de minimis harm because the actual harm allegedly suffered is negligible.

6.     Plaintiff has failed to take reasonable steps to mitigate her alleged damages, delayed unreasonably in doing so, or has taken steps that have exacerbated her alleged damages.

7.     Plaintiff's claims are barred under the doctrine of laches because she has unreasonably delayed efforts to enforce her rights, if any, despite full awareness of the alleged actions of Defendants.

8.     Plaintiff's claims are barred under the equitable doctrine of unclean hands.

9.     The claims in the Complaint are barred, in whole or in part, because any violation of law, which is specifically denied, was not intentional, not willful or knowing, and resulted from a good-faith error or mistake.

10.     With respect to Plaintiff's claim for damages, Defendants incorporate all limitations on damage awards arising from the decisions *in BMW of North America v. Gore*, 517 U.S. 559 (1996) and *State Farm Mutual Auto Ins. Co. v. Campbell*, 537 U.S. 1042 (2003).

11.     To the extent any of the violations alleged by Plaintiff are based on acts occurring after the applicable statutes of limitation expired, Plaintiff's claims are barred in whole or in part.

WHEREFORE, Plaintiff's Complaint should be dismissed with prejudice, that all of Plaintiff's requested relief be denied, and that Defendants be awarded their costs and attorney's fees in having to respond to and defend against this action.

Dated:  February 24, 2020                    Respectfully submitted,

                                             Lewis Brisbois Bisgaard & Smith LLP


                                             By: /s/Gregory L. Biehler
                                             Gregory L. Biehler
                                             Lewis Brisbois Bisgaard & Smith, LLP
                                             8801 Horizon Blvd., Suite 300
                                             Albuquerque, NM 87113
                                             Phone:  (505) 828-3600
                                             Facsimile:  (505) 828-3900
                                             Greg.Biehler@lewisbrisbois.com
                                             *Counsel for Defendants Palmer Administrative*
                                             *Services Inc., PayLink Payment Plans LLC, DeSilva*
                                             *Automotive Services LLC, and Vajira Samararante*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the below date, a copy of the foregoing document was filed electronically, with the Court's CM/ECF, which will provide notice of the same on the parties.

Dated:  February 24, 2020                    By: */s/ Gregory L. Biehler*

                                                 Gregory L. Biehler

                                                 Attorneys for Defendants

*Counsel for Defendants Palmer Administrative Services Inc., PayLink Payment Plans LLC, DeSilva Automotive Services LLC, and Vajira Samararante*