## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

MARJORIE CHILDRESS

      Plaintiff,

vs.                                                                 No. CIV 20-0136 JB\JHR

DESILVA AUTOMOTIVE SERVICES, LLC;
PALMER ADMINISTRATIVE SERVICES, INC.;
VAJIRA SAMARATNE; and
PAYLINK PAYMENT PLANS, LLC,

      Defendants.

## <u>MEMORANDUM OPINION AND ORDER</u>

**THIS MATTER** comes before the Court on the Defendants' Joint Motion to Stay Case and Brief in Support, filed April 6, 2020 (Doc. 15)("Motion"). The Court held a hearing on June 3, 2020. The primary issue is whether the Court should stay prosecution of Plaintiff Marjorie Childress' Complaint for Violations of the Telephone Consumer Protection Act, the Unfair Practices Act, and Torts, filed in state court on January 14, 2020, filed in federal court on February 17, 2020 (Doc. 1-1)("Complaint"), because the Supreme Court of the United States of America has granted certiorari in <u>Barr v. American Association of Political Consultants</u>, 140 S. Ct. 812 (2020), to determine whether the Telephone Consumer Protect Act of 1991, Pub. L. No. 102-243, 105 Stat. 2394 ("TCPA"), which restricts robocalls[1] to cellular telephones, violates the Speech Clause of the First Amendment to the Constitution of the United States of America, and Childress

---

[1]A robocall is a telephone call that "uses a computerized autodialer to deliver a pre-recorded message, as if from a robot. Robocalls are often associated with political and telemarketing campaigns, but can also be used for public-service or emergency announcements. Some robocalls use personalized audio messages to simulate an actual personal phone call." Wikipedia, "Robocall," https://en.wikipedia.org/wiki/Robocall (last accessed July 1, 2020).

alleges a claim based on the TCPA.  The Court denies the Motion, because Defendant DeSilva Automotive Services, LLC ("DeSilva Automotive") has not met its burden in justifying that a stay is warranted.

## FACTUAL BACKGROUND

Childress contends that DeSilva Automotive, Defendant Vajira Samaratne, Defendant Palmer Administrative Services, Inc. ("Palmer Services"), and Defendant Paylink Payment Plans, LLC ("Paylink Payment"), are engaged in an "autodialing conspiracy."  Complaint at 10. Childress alleges that DeSilva Automotive, under Samaratne's direction, either is operating its own call-center or has contracted with a marketing company, to initiate "hundreds of thousands or millions of unlawful robocalls into the State of New Mexico" to market vehicle service contracts ("VSCs").  Complaint ¶ 22, at 5. See id. ¶ 23, at 5-6.  Childress alleges that Palmer Services administers these contracts, see Complaint ¶ 23, at 24, and that Paylink Payment "finances the purchase price of Palmer Service's VSCs sold to customers by DeSilva's telemarketing," Complaint ¶ 24, at 12.  Childress alleges that DeSilva Automotive and Samaratne direct these calls primarily to elderly New Mexico residents.  See Complaint ¶ 31, at 13.

Childress further alleges that Paylink Payment "knows that many of the VSCs it chooses to finance are sold via unsolicited phone calls including robocalls, and that the sellers would not be able to sell the VSCs or even profitably engage in robocalling without the substantial assistance and support of Paylink's services[.]"  Complaint ¶ 32, at 13.  Childress alleges that Paylink Payment "chooses" not to supervise those who market its services and instead "remain[s] willfully or consciously ignorant of whether or not the marketers" comply with state and federal law.

Complaint ¶ 33, at 13.  Childress says, however, that "numerous" complaints have brought the robocalling practices to Paylink Payment's attention.  Complaint ¶ 31, at 6-7.

Childress says that she owns a cellular telephone ("cellphone") with a New Mexico area code.  See Complaint ¶ 48, at 10.   Childress' cellphone number is on the National Do-Not Call Registry ("Registry"), and Childress "never consented" to robocalls from the Defendants. Complaint ¶ 58, at 12.  See id. ¶ 56, at 12.  DeSilva Automotive, under Samaratne's direction and control, "ha[s] repeatedly called Plaintiff's wireless phone with an automatic telephone dialing system."  Complaint ¶ 49, at 10.  Childress received each of these calls over a twelve-month period. See Complaint ¶ 65, at 12.  Childress contends that DeSilva Automotive called her via autodialer, because "whenever she answered one of these calls she was greeted by an artificial voice or pre-recorded message that told her [that] her auto warranty was about to expire and she should press '1' to speak to a live telemarketer about it."  Complaint ¶ 50, at 11.  The use of artificial or pre-recorded voices to greet consumers who answer telephone calls is "a tell-tale indicator of mass-marketing by automation as opposed to human-made calls."  Complaint ¶ 51, at 11.  When Childress requested to speak with a live telemarketer, the live telemarketer never identified the call's sponsor within fifteen seconds of Childress answering "or at any other time."  Complaint ¶ 53, at 11.  "After months of repeated robocall harassment," Childress spoke with a live telemarketer and purchased a VSC "so she could actually identify Defendants."  Complaint ¶ 54, at 11.  Childress later received a "VSC booklet" that identified "DeSilva and its co-conspirators," Paylink Payment and Palmer Services.  Complaint ¶ 55, at 11-12.  Childress says that the Defendants' calls "aggravated and harassed [her], wasted her time, invaded her privacy, disrupted her days, were an obnoxious nuisance, cost her money to identify Defendants, and cost her

electricity to re-charge her phone." Complaint ¶ 60, at 12. Childress alleges that the Defendants knowingly and willfully called her even though her cellphone number is on the Registry. See Complaint ¶ 73, at 14.

## PROCEDURAL BACKGROUND

Childress alleges five claims for relief. See Complaint ¶¶ 80-91, at 16-17. First, Childress alleges that the Defendants violated the TCPA, 47 U.S.C. § 227(b). See Complaint ¶ 80, at 16. Second, Childress alleges that the Defendants violated the TCPA, 47 U.S.C. § 227(c), because the Defendants called her more than once in a twelve-month period. See Complaint ¶ 82, at 16. Third, Childress asserts a common-law claim for trespass to chattels "and for their civil conspiracy to direct an illegal telemarketing campaign into the State of New Mexico and to Plaintiff in particular." Complaint ¶ 84, at 16. Fourth, Childress alleges that the Defendants violated the New Mexico Unfair Practices Act, N.M. Stat. Ann. §§ 57-12-1 to -26 ("NMUPA"). See Complaint ¶¶ 87-91, at 17. Specifically, Childress alleges that each of the Defendants' calls to her violate N.M. Stat. Ann. § 57-12-22(A), (B)(1), and (C)(1). See Complaint ¶¶ 88-89, at 17. Childress contends that, for each of her claims, DeSilva Automotive is directly liable for its telephone calls to Childress, and that Samaratne, Paylink Payment, and Palmer Services are vicariously liable, because DeSilva Automotive acted as their agent subject to their control. See Complaint ¶¶ 72-73, at 14. The Defendants now ask that the Court stay the proceedings until the Supreme Court decides whether the TCPA is an unconstitutional content-based restriction of speech and, if so, whether the unconstitutional provision is severable from the rest of the TCPA. See Motion at 1.

1.      **The Motion.**

The Defendants say that the Complaint "involves a single claim" under the TCPA and

argue that the Court should stay this case, because the Supreme Court has granted certiorari in <u>Barr</u>

<u>v. American Association of Political Consultants</u>, 140 S. Ct. 812 (No. 19-631)("<u>Barr v. AAPC</u>")

to decide the TCPA's constitutionality.  Motion at 1.  The Defendants say that the AAPC advances

two primary arguments before the Supreme Court: (i) the TCPA's exceptions for robocalls made

solely to collect a debt owed to the United States renders the TCPA an impermissible content-

based speech restriction; and (ii) the government-debt exception is not severable from the rest of

the statute.  <u>See</u> Motion at 3 (citing <u>Am. Ass'n of Political Consultants, Inc., v. Sessions</u>, 323 F.

Supp. 3d 737, 741 (E.D.N.C. 2018)(Dever, J.)("AAPC v. Session")).  The Defendants aver that

the United States Court of Appeals for the Fourth Circuit concluded that the government-debt

exception is unconstitutional but that the exception is severable from the rest of the statute.  <u>See</u>

Motion at 3 (citing <u>Am. Ass'n of Political Consultants, Inc. v. FCC</u>, 923 F.3d 159, 166 (4th Cir.

2019)("AAPC v. FCC")).  The Defendants say that both the United States and the AAPC sought

certiorari, with the United States contending that the government-debt exception is content neutral

and the AAPC arguing that the entire TCPA is a content-based restriction that is unconstitutional

in its entirety.  <u>See</u> Motion at 4 (citing Petition for Writ of Cert. at 6, <u>Barr v. AAPC</u>, 140 S. Ct. 812

(No. 19-631), 2019 WL 6115075, at *2 (Nov. 14, 2019); Brief of Respondents in Support of Cert.

at 13-19, <u>Barr v. AAPC</u>, 140 S. Ct. 812 (No. 19-631), 2019 WL 6609436, at *12-13).  The

Defendants also note that the United States Court of Appeals for the Ninth Circuit has "twice held

that the automated-call ban is unconstitutional, and twice applied severance as the remedy."

Motion at 3 n.3 (citing <u>Duguid v. Facebook, Inc.</u>, 926 F.3d 1146, 1151 (9th Cir. 2019); <u>Gallion v.</u>

United States, 772 F. App'x 60, 65 (9th Cir. 2019)(unpublished)).  The Defendants state that the Supreme Court has granted certiorari in Barr v. AAPC to determine: (i) whether the government-debt exception violates the First Amendment; and (ii) if so, whether the proper remedy is to sever the government-debt exception.  See Motion at 4.

The Defendants assert that "all relevant considerations in this case weigh in favor of granting a stay" until the Supreme Court issues its opinion in Barr v. AAPC.  Motion at 5.  The Defendants rely on Schartel v. OneSourch Tech., LLC, No. 1:15 CV 1434, 2015 WL 7430056 (N.D. Ohio Nov. 17, 2015)(Gaughan, J.)("Schartel"), for the legal standard for when district courts should grant stays pending the Supreme Court's disposition of a separate proceeding.  See Motion at 5.  First, the Defendants aver that the Supreme Court's ruling in Barr v. AAPC is "'likely to have a substantial or controlling effect on the claims and issue'" in this case.  Motion at 5 (quoting Luster v. Jewelers, No. 1:15-cv-2854-WSD, 2015 WL 9255553, at *4 (N.D. Ga. Dec. 17, 2015)(Duffey, J.)).  The Defendants contend that the Supreme Court will likely "invalidate the automated-call ban on First Amendment grounds" and will "likely invalidate the whole ban, rather than sever part of it."  Motion at 6.  The Defendants posit that a full invalidation is likely, because "Supreme Court precedent firmly establishes that when a content-based restriction on speech violates the First Amendment, the proper remedy is to invalidate the restriction, not sever the speech-permitting exception."  Motion at 6 (citing Reed v. Town of Gilbert, 576 U.S. 155, 173 (2015); Ark. Writers Project, Inc. v. Ragland, 481 U.S. 221, 223-24, 234 (1987)).  The Defendants state that, if the Supreme Court concludes that the TCPA is unconstitutional in its entirety, "that will extinguish Plaintiff's primary claim in this case."  Motion at 7.

The Defendants next say that staying these proceedings will "promote judicial economy." Motion at 7 (citing Griffth v. Menard, Inc., No. 2:18-cv-81, 2018 WL 1907348, at *4 (S.D. Ohio April 23, 2018)(Vascura, M.J.)).  The Defendants contend that "the one district court opinion to address the merits of staying a TCPA case pending [Barr v. AAPC] came to the same conclusion." Motion at 7 (citing Wright v. EXP Realty, LLC, No. 6:19-CV-01851, 2020 WL 1149906, at *1 (M.D. Fla. Feb. 7., 2020)(Byron, J.).  The Defendants further aver that a stay is "particularly appropriate," because Childress has "served overbroad and harassing discovery that is [not] proportional to the needs of the case[.]"  Motion at 8.

The Defendants next contend that a stay will serve the public's interest in avoiding potentially unconstitutional speech restrictions.  See Motion at 8.  The Defendants argue that, given the risk that the TCPA is facially unconstitutional, the Court should err on the side of caution in avoiding the TCPA's immediate enforcement against the Defendants.  See Motion at 8.  The Defendants also aver that the public has a "strong interest in the efficient and fair administration of justice" and uniform statutory interpretation.  Motion at 9.  The Defendants say that "TCPA plaintiffs routinely serve mass subpoenas on cellular carriers that result in wide-ranging discovery disputes, depositions of custodians, and other significant costs," and so a "stay in this matter only serve the interests of non-parties that are obligated to respond to Plaintiff's subpoenas and will promote the efficient use of judicial resources in the event of a discovery dispute."  Motion at 9.

Last, the Defendants aver that a stay will not prejudice Childress, because the Supreme Court should soon issue its opinion in Barr v. AAPC.  See Motion at 9-10.  The Defendants contend that, to the extent that a stay will prejudice Childress, that prejudice is minimal, because Childress seeks only monetary damages.  See Motion at 9 n.6 (citing In re Settlement Facility Corning Tr.,

No. 14-1090, 2014 WL 4824822, at *1 (6th Cir. 2014)(unpublished)).[2]  The Defendants further assert that a stay will enable the parties to conserve litigation expenses that may become futile if the Supreme Court invalidates the TCPA.  See Motion at 10.  The Defendants note that this case is in its infancy, which minimizes a stay's prejudice to Childress.  See Motion at 10.  Accordingly, the Defendants request that the Court grant the Motion.

　　　　2.　　　**The Response.**

　　　Childress responds.  See Plaintiff's Response to Defendants' Joint Motion to Stay Case at 1, filed April 16, 2020 (Doc. 21)("Response").  Childress argues that the Defendants "mis-characterize [Barr v. AAPC] and . . . Plaintiff's Complaint and her claims."  Response at 1. Childress says that the Court should predict that the Supreme Court will not invalidate the TCPA's general robocall ban.  See Response at 1.  Childress also asserts that her TCPA "Subchapter B claims are the smaller part of this case," so, "[e]ven in the extremely unlikely event [that] the Supreme Court holds the entirety of the TCPA's Subchapter B unconstitutional, discovery in this case continues over the remainder of Plaintiff's claims."  Response at 1.  Childress says that the Complaint's "larger part" concerns the TCPA's "Subchapter C claims ('do-not-call' claims) and state-law claims arising under the" NMUPA.  Response at 1-2.[3]

　　　Childress first argues that the Supreme Court will not invalidate the TCPA's robocall ban. See Response at 2.  Childress says that, when Congress enacted the TCPA in 1991, Congress

---

　　　[2]In In re Settlement Facility Corning Trust, the United States Court of Appeals for the Sixth Circuit noted that, while deferring monetary payment may not "constitute a significant harm, the longer [a party waits] for payments, the greater the harm."  2014 WL 4824822, at *2.

　　　[3]The Response numbers its second page as page 3.  Accordingly, the Court's citations to the Response refer to the automated and more accurate page numbers that ECF generates at the top of each page, and not to the Response's page numbers listed at the bottom of each page.

provided two exceptions: (i) calls made for emergency purposes; and (ii) calls made with the recipient's express, prior consent.  Response at 2 (citing Am. Ass'n of Political Consultants v. FCC, 923 F.3d at 162; Duguid v. Facebook, Inc., 926 F.3d at 1149).  Childress asserts that, since the TCPA's 1991 enactment, the TCPA has "withstood various constitutional challenges." Response at 2 (citing Mainstream Marketing v. FCC, 358 F.3d 1228 (10th Cir. 2004)).  Childress further contends that the robocall ban furthers compelling governmental interests.  See Response at 2 (citing Mims v. Arrow Fin. Servs., LLC, 556 U.S. 368, 372 (2012)).  Childress also notes that the Ninth Circuit has previously concluded that the robocall ban is not a viewpoint- or content-based restriction, and Childress asserts that the Ninth Circuit and the Supreme Court have recently affirmed this conclusion.  See Response at 3 (citing Moser v. FCC, 46 F.3d 970 (9th Cir. 1995); Gomez v. Campbell-Ewald, 768 F.3d 871, 876 (9th Cir. 2014), aff'd 136 S. Ct. 663 (2016)). Childress thus says that the Defendants' contention that the Ninth Circuit has "'twice held that the automated-call ban is unconstitutional'" is "false."  Response at 3 n.1 (quoting Motion at 3 n.3).

Childress says that, in 2015, Congress added a third exception to the TCPA's robocall ban, thereby permitting calls made solely to collect a debt owed to the United States.  See Response at 3.  Childress asserts that the AAPC now argues that the government-debt exception renders the TCPA fatally underinclusive, because the TCPA now "favors certain commercial speech while prohibiting political speech."  Response at 3.  Childress says that the AAPC also "sweepingly asserted that the underinclusive, newly-added 2015 debt-collection exception was not severable from the automated call ban, and renders the TCPA's entire 1991 automated call ban unconstitutional."  Response at 3-4.  Childress notes that the Fourth Circuit agreed with the AAPC that the government-debt exception is unconstitutional, but Childress says that the Fourth Circuit

agreed with the United States that the proper remedy was to sever the government-debt exception. See Response at 4 (citing AAPC v. FCC, 923 F.3d at 171-72). Childress also cites the Ninth Circuit: "'The newly enacted exception did not suddenly and silently become so integral to the TCPA that the statute could not function without it.'" Response at 5 (quoting Duguid v. Facebook, Inc., 926 F.3d at 1157).

Childress avers that the Defendants "fail to explain" that the Supreme Court granted the United States' petition for certiorari in Barr v. AAPC. Response at 6. Childress avers that this fact is important, because the AAPC's request that the Supreme Court invalidate the TCPA in its entirety "is a *sideshow* to the main event," and that the Supreme Court must "tolerate" the AAPC's argument only because the AAPC is a party. Response at 6-7 (emphasis in original). Childress says that the United States, in its petition for certiorari, contended that the Supreme Court "'usually grants review when a court of appeals has invalidated a provision of a federal statute,'" rendering the Supreme Court's grant of certiorari unremarkable and unlikely to overturn caselaw concluding that the TCPA is generally constitutional. Response at 6 (quoting Petition for Certiorari, 2019 WL 6115075, at *6). Childress says that the AAPC submitted a response brief in support of the United States' petition, "so it could continue its ridiculous, telemarketer-speak arguments." Response at 6. As an example, Childress points to the AAPC's framing of the question presented before the Supreme Court, in which the AAPC stated that the Fourth Circuit "'took the *extraordinary* step of rewriting the statute to prohibit more speech . . . while leaving all of the statute's *unconstitutional speech restrictions* intact.'" Response at 6 (quoting Brief of Respondents in Support of Cert, 2019 WL 6609436, at *2))(emphasis in Response and not in Brief of Respondents in Support of Cert.). Childress says that there is nothing extraordinary "about the Supreme Court's longstanding,

common-sense severance doctrine" that the Fourth Circuit applied.  Response at 7.  Childress further contends that the AAPC does not "offer any authority or good policy for why the Supreme Court should scrap all its severance doctrine and the TCPA itself."  Response at 7.  Childress says that the Court "should not be overly impressed that an organization like AAPC has managed to bring its circus-argument telemarketer-speak before the Supreme Court as a sideshow to the main event."  Response at 7.

Childress asks that the Court predict that Supreme Court's decision in Barr v. AAPC will not affect Childress' claims before the Court.  See Response at 8.  Childress avers that courts "are frequently called upon to make predictions about how a court may rule on certain issue" and that, in this case, that prediction is "easy."  Response at 8.  Childress contends that it is "extremely unlikely" that the Supreme Court will "disagree with the Fourth Circuit and the Ninth Circuit that severance is the proper remedy."  Response at 8 (emphasis omitted).

Childress next seeks to distinguish the Defendants' cited cases in which district courts have stayed TCPA actions pending the Supreme Court's resolution of Barr v. AAPC.  See Response at 8.  First, Childress acknowledges that, in Wright v. EXP Realty, the Honorable Paul G. Byron, United States District Judge for the United States District Court for the Middle District of Florida, stayed a TCPA class action pending Barr v. AAPC's disposition, but Childress asserts that the parties had already completed discovery and the parties had recently filed dispositive motions.  See Response at 8.  Second, Childress says that, in Seefeldt v. Entertainment Consulting, No. 4:19-cv-00188, 2020 WL 905844 (E.D. Mo. Feb. 25, 2020)(Limbaugh, J.), the defendants "raised the very same constitutional challenge to the automated call ban that is before the Supreme Court," and so "it makes perfect sense that that trial court would wait for the Supreme Court to decide the very

same issue it was being asked to decide."  Response at 8.  Childress avers that, in contrast, she "just wants to conduct routine discovery of the type normally done in an individual action," and that if the "Defendants will kindly comply with the Court's rules by providing discovery including Initial Disclosures, there is no necessity of court-intervention or judicial resources to conserve." Response at 8-9.

Childress also asserts that, "even in the extremely unlikely event that the Supreme Court strikes down the automated call ban," discovery will continue for Childress' other claims. Response at 9.  Childress says that the Complaint also alleges that the Defendants violated the TCPA's prohibition against calling individuals on the Registry.  See Response at 9.  Childress further contends that 47 U.S.C. § 227(c)(5) creates an additional private cause of action for a person who has received more than one telephone call that violates the TCPA within any twelve-month period from the same entity.  See Response at 9-10 (citing Charvat v. NMP LLC, 656 F.3d 440 (6th Cir. 2011)).  Moreover, Childress asserts that her NMUPA claims "do not require any showing of 'automated' calling."  Response at 10 (emphasis omitted)(quoting 47 U.S.C. § 227(a) and citing N.M. Stat. Ann. § 57-12-22(B)(1) and (C)(1)).  Childress avers that the NMUPA creates a private right of action against practices or acts that the United States Federal Trade Commission ("FTC") defines as deceptive.  See Response at 10 (citing N.M. Stat. Ann. § 57-12-4).  According to Childress, the FTC has promulgated a rule that it is a deceptive trade practice to substantially assist any telemarketer or seller who engages in prohibited telemarketing practices.  See Response at 10 (citing 16 C.F.R. 310.3(b)).  Childress says that the Complaint alleges that DeSilva Automotive and Samaratne, under Paylink Payment and Palmer Service's direction and support, engaged in prohibited telemarketing practices, and Childress alleges that those acts violate the

NMUPA regardless whether the practices involved automated calls.  <u>See</u> Response at 10.  Childress states that she will pursue discovery which will focus on whether the Defendants engaged in abusive practices in violation of the FCC's Telemarketing Sales Rule, which is relevant primarily to Childress' NMUPA claim.  <u>See</u> Response at 10-11.

Last, Childress says that a stay would render necessary discovery impossible.  <u>See</u> Response at 12.  Childress describes discovery disputes between her and the Defendants, including whether the Defendants have produced evidence that Childress consented to DeSilva Automotive's automated calls.  <u>See</u> Response at 12-13.  Childress vigorously disputes that she consented to any of DeSilva Automotive's calls and attaches exhibits that, she asserts, demonstrate that she did not consent.  <u>See</u> Response at 12-13.  Childress contends, however, that a stay may foreclose some of the discovery that she seeks to conduct, including issuing subpoenas to third-party telephone service providers, because telephone providers typically purge their records every three to six months.  <u>See</u> Response at 13.  Childress thus contends that a stay would prejudice her ability to prosecute her case against the Defendants.  Childress further asserts that the Defendants "abusively refuse to disclose the actual date" on which they allege she consented to the Defendants' telephone calls.  Response at 14.  Childress says that the Defendants' refusal necessitates her discovery requests that the Defendants characterize as excessive.  <u>See</u> Response at 14.  Childress also alleges that, when the Defendants called Childress, they tended to manipulate their telephone numbers so that Childress would be unable to identify the Defendants as the source of the calls, a practice which Childress says violates 47 U.S.C. § 227(e)(1) and (e)(5)(B).  <u>See</u> Response at 14.  Childress thus says she has immediate need to conduct discovery before the information that she seeks is irretrievable.  <u>See</u> Response at 14-15.  Accordingly, Childress asks that the Court deny the Motion.

###### 3.      **The Reply**.

The Defendants reply.  See Defendants' Joint Reply in Support of Motion to Stay Case and Brief in Support at 1, filed April 30, 2020 (Doc. 22)("Reply").  The Defendants first contend that Childress "ignores arguments before the Supreme Court demonstrating that, based on First Amendment jurisprudence, the correct remedy is to find the TCPA's automated call ban as a whole unconstitutional."  Reply at 1.  The Defendants also say that there are pending petitions for certiorari in other cases asking the Supreme Court to determine the TCPA's constitutionality, and the Defendants say that these pending petitions suggest that "the Supreme Court may do more than simply address the government debt exception."  Reply at 1.  The Defendants predict that the Supreme Court will invalidate the TCPA in its entirety, because the Supreme Court typically does not grant certiorari "simply to affirm prior decisions."  Reply at 1.  The Defendants contend that "the fact that there is an imminent decision forthcoming from the Supreme Court on a potentially-dispositive issue alone merits a stay."  Reply at 2.  The Defendants assert that courts typically do not predict the outcome of pending, relevant Supreme Court cases, but rather that "the whole point of a stay is to avoid such speculation."  Reply at 2 (citing Schartel v. OneSource Tech., LLC, 2015 WL 7430056, at *1; Eric. B. Fromer Chiropractic, Inc. v. N.Y. Life Ins. and Annuity Corp., No. 15-4767, 2015 WL 6579779, at *2 (C.D. Cal. Oct. 19, 2015)(Birotte, J.); Walker v. Monsanto Co. Pension Plan, 472 F. Supp. 2d 1053, 1055 (S.D. Ill. 2006)(Herndon, J.)).  The Defendants aver that Childress does not cite any authority for her request that the Court predict Barr v. AAPC's disposition.  See Reply at 3 (citing Response at 8).  Next, the Defendants contend that the Supreme Court granted certiorari to evaluate severance generally as a remedy for unconstitutional statutes rather than solely to evaluate to the propriety of the Fourth Circuit's remedy in AAPC v. FCC.

See Reply at 4.  The Defendants thus assert that the Supreme Court will likely conclude that severance is not a remedy for content-based speech restrictions.  See Reply at 3 (citing Reed v. Town of Gilbert, 576 U.S. at 173-74).

The Defendants next seek to rebut Childress' contention that Seefeldt v. Entertainment Consulting and Wright v. EXP Realty, LLC are distinguishable.  See Reply at 4.  The Defendants first assert that other courts have issued stays in TCPA cases despite plaintiffs asserting additional causes of action.  See Reply at 4 (citing Dan. L. Bolger v. Citrix Sys., Inc., 8:19-cv-01234-PX, 2020 WL 1939702 (D. Md. April 24, 2020)(Xinis, J.); Douglas Lacy v. Comcast Cable Commc'ns, LLC, No. 3:19-cv-05007, 2020 WL 2041755 (W.D. Wash. April 28, 2020)(Leighton, J.); Lindenbaum v. Realgy, LLC, No. 1:19 CV 2862, 2020 WL 1908639, at *2 (N.D. Ohio March 19, 2020)(Gaughan, J.); Perrong v. Liberty Power Corp., L.L.C., No. 1:18cv712, (D. Del. March 6, 2020)(Noreika, J.); Nakai v. Charter Commc'ns, Inc., No. CV 19-8035-GW-SSX, 2020 WL 1908949, at *6 (C.D. Cal. Apr. 15, 2020)(Wu, J.)).

Next, the Defendants dispute Childress' contention that the Complaint is minimally dependent on the TCPA's automated-call ban. See Reply at 5.  The Defendants aver that Childress' "other claims are ancillary" to her automated-call claim.  Reply at 5 (citing Complaint ¶¶ 3, 7, 19, 47, 49-52, at 2-10).  The Defendants assert that, contrary to Childress' argument, her NMUPA claim is also ancillary to her automated-call claims, because Childress "alleges that the [NMUPA] is 'of similar design as it pertains to telephoning customers.'"  Reply at 5 (quoting Complaint ¶ 3, at 1).  The Defendants further contend that Childress' discovery requests pertain primarily to her automated-call claim, because none of Childress' discovery requests pertain solely to the NMUPA. See Reply at 5.

The Defendants next aver that the Court will "easily dispose[]" of Childress' other claims, because Childress "called Plaintiff once, with her consent."  Reply at 6.  The Defendants assert that Childress has "produced no evidence that Defendants engaged in the numerous other telephone calls Plaintiff alleges to have received."  Reply at 6.  The Defendants argue that this "lack of evidence supporting Plaintiff['s] secondary claims" further justifies a stay.  See Reply at 7.

The Defendants also reiterate their argument that a stay will not prejudice Childress, and the Defendants assert that Childress' summary of the parties' discovery disputes is irrelevant.  See Reply at 6.  The Defendants note Childress' document-retention argument, but the Defendants aver that Childress has produced no evidence of third-party data retention policy.  See Reply at 7.  The Defendants also assert that Childress' contention that she is familiar with data-retention policies is worthless without a "declaration attesting" to such knowledge.  Reply at 6.  Further, the Defendants contend that discovery delays are inherent to stays and that Childress "cannot oppose a stay by 'rely[ing] on the type of prejudice inherent in any stay.'"  Reply at 6 (quoting Ankcorn v. Kohl's Corp., No. 15-CV-1303, 2017 WL 395707, at *4 (N.D. Ill. Jan. 30, 2017)(Dow., J.)).  Last, the Defendants assert that Childress' summary of the parties' discovery disputes supports a stay, because a stay will allow the Court to avoid time-consuming adjudication of the disputes.  See Reply at 7.  Accordingly, the Defendants ask that the Court stay the proceedings pending the Supreme Court's resolution of Barr v. AAPC.  See Reply at 8.

## LAW REGARDING THE TCPA

In 1991, Congress enacted the TCPA "to protect the privacy interests of residential telephone subscribers by placing restrictions on unsolicited, automated telephone calls to the home

and to facilitate interstate commerce by restricting certain uses of facsimile . . . machines and automatic dialers."  S. Rep. No. 102-178, at 1, reprinted in 1991 U.S.C.C.A.N. 1968, 1968.  <u>See</u> Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, 105 Stat. 2394.  The TCPA imposes several restrictions on automated telephone calls.  <u>See</u> 47 U.S.S. § 227(b).  Section 227(b)(1) or Title 47 of the United States Code provides, in pertinent part:

> It shall be unlawful for any person within the United States, or any person outside the United States if the recipient is within the United States --
>
> > (A)    to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice --
> >
> > . . .
> >
> > > (iii)    to any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call, unless such call is made solely to collect a debt owed to or guaranteed by the United States;
> >
> > (B)    to initiate any telephone call to any residential telephone line using an artificial or prerecorded voice to deliver a message without the prior express consent of the called party, unless the call is initiated for emergency purposes, is made solely pursuant to the collection of a debt owed to or guaranteed by the United States, or is exempted by rule or order by the Commission under paragraph (2)(B)[.]

47 U.S.C. § 227(b)(1).  The TCPA defines "automated telephone dialing system" as "equipment which has the capacity . . . (A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers."  47 U.S.C. § 227(a)(1).  When Congress initially enacted the TCPA, it exempted from the automated-call restriction any "call

made for emergency purposes or made with the prior express consent of the called party."  § 3(a), 105 Stat. 2395-96.  See 47 U.S.C. § 2(b)(1)(A).  In 2015, Congress amended the TCPA to provide an additional exception for calls "made solely to collect a debt owed to or guaranteed by the United States."  § 301(a)(1)(A), 129 Stat. 588.  See 47 U.S.C. § 227(b)(1)(A)(iii).

In addition to the restrictions on automated dialing, the TCPA instructs the FCC to promulgate regulations "concerning the need to protect residential telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object."  47 U.S.C. § 227(c)(1).  The FCC accordingly issued rules prohibiting "person[s] or entit[ies] [from] initiat[ing] any call for telemarketing purposes to a residential telephone subscriber unless [the] person or entity has instituted [certain listed] procedures for maintaining" a do-not-call list.  47 C.F.R. § 64.1200(d).  In pertinent part, these regulations require the telemarketer to: (i) provide "the name of the individual caller, the name of the person or entity on whose behalf the call is being made, and a telephone number or address at which the person or entity may be contacted," § 64.1200(d)(4); (ii) create and maintain a list of individuals who may not be called, see § 64.1200(d)(6); and (iii) comply with a person's request not to be called, see § 64.1200(d)(3).  The TCPA's subsection (c) also creates a private right of action, which states:

> A person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may, if otherwise permitted by the laws or rules of court of a State bring in an appropriate court of that State --
>
> > (A)    an action based on a violation of the regulations prescribed under this subsection to enjoin such violation,
> >
> > (B)    an action to recover for actual monetary loss from such a violation, or to receive up to $500 in damages for each such violation, whichever is greater, or

(C)     both such actions.

It shall be an affirmative defense in any action brought under this paragraph that the defendant has established and implemented, with due care, reasonable practices and procedures to effectively prevent telephone solicitations in violation of the regulations prescribed under this subsection.  If the court finds that the defendant willfully or knowingly violated the regulations prescribed under this subsection, the court may, in its discretion, increase the amount of the award to an amount equal to not more than 3 times the amount available under subparagraph (B) of this paragraph.

47 U.S.C. § 227(c)(5).

Statutory damages are available separately under both the TCPA's automated-call provision and its do-not-call-list provision, , see 47 U.S.C. § 227(b), (c),  even if separate violations result from a single call, see, e.g., Charvat v. NMP, LLC, 656 F.3d at 449.  Subsection (b) creates "an action based on a violation of this subsection or the regulations prescribed under this subsection," 47 U.S.C. § 227(b)(3)(A), while subsection (c) creates a cause of actions based on a "telephone call . . . in violation of the regulations prescribed under this subsection," 47 US.C. § 227(c)(5).  Further, subsection (c) requires that the plaintiff "receive[] more than one telephone call within any 12-month period by or on behalf of the same entity," and includes an affirmative defense if "the defendant has established, with due care, reasonable practices and procedures to effectively prevent telephone solicitations in violation of the regulations" that subsection (c) prescribes.  47 U.S.C. § 227(c)(5).  Subsection (b) does not include these provisions.  See 47 U.S.C. § 227(b).  Further, the two subsections "target different harms: Subsection (b) imposes greater restrictions on automated telephone calls and transmissions, which Congress found to be 'more of a nuisance and a greater invasion of privacy than calls placed by "live" persons.'"  Charvat v. NMP, LLC, 656 F.3d at 449 (quoting S. Rep. No. 102-178, at 4-5, reprinted in 1991 U.S.C.C.A.N. 1968, 1972.  In contrast, subsection (c) imposes minimum procedures for maintaining a do-not-

- 19 -

call list that applies to all calls regardless whether the call is automated.  See 47 U.S.C. § 227(c); 47 C.F.R. § 64.1200(d).  Plaintiffs may thus recover statutory damages under the TCPA for a telemarketer's lack of compliance with the do-not-call procedures as well as for the telemarketer's use of robocalling.  See Charvat v. NMP, LLC, 656 F.3d at 448-49.

1.      **The Proceedings in Barr v. AAPC and the Government-debt Exception's Constitutionality.**

Before Congress amended the TCPA in 2015 and added the government-debt exception, courts uniformly deemed the TCPA constitutionally permissible.  See, e.g., Duguid v. Facebook, Inc., 926 F.3d at 1153 ("We have repeatedly affirmed that the pre-amendment TCPA was content-neutral and consistent with the First Amendment." (citing Gomez v. Campbell-Ewald Co., 768 F.3d at 876; Moser v. FCC, 46 F.3d at 975)).  These courts concluded that the TCPA's requirement that the telemarketer identify its telephone number and sponsor is content-neutral, because the requirement "applies regardless of the content of the message that is relayed to the recipient." Maryland v. Universal Elections, Inc., 729 F.3d 370, 376 (4th Cir. 2013).  Courts further concluded that the TCPA's autodialing restrictions serve important governmental interests in "protecting residential privacy; promoting disclosure to avoid misleading recipients of recorded calls; and promoting effective law enforcement."  Maryland v. Universal Elections, Inc., 729 F.3d at 376.

After Congress added the government-debt exception, the AAPC, the "Democratic Party of Oregon, Inc., Public Policy Polling, LLC, the Tea Party Forward PAC, and the Washington State Democratic Central Committee . . . sued United States Attorney General Loretta Lynch in her official capacity" and the FCC.  AAPC v. Sessions, 323 F. Supp. 3d at 739.  The Honorable James Dever III, United States District Judge for the United States District Court for the Eastern District of North Carolina, granted summary judgment in the defendants' favor.  See 323 F. Supp.

3d at 741.  Judge Dever first concluded that the government-debt exception is a content-based speech regulation, because the exception renders liability under the TCPA dependent on the telephone call's content.  See 323 F. Supp. 3d at 743.  Subjecting the TCPA to strict scrutiny, Judge Dever concluded that the TCPA furthers a compelling government interest in "protecting the well-being, tranquility, and privacy of the individual's residence."  342 F. Supp. 3d 744 (citing Mims v. Arrow Fin. Servs., LLC, 565 U.S. 368, 372 (2012)(concluding that the TCPA promotes individual privacy in the home); Carey v. Brown, 447 U.S. 455, 471 (1980)(concluding that government has a compelling interest in protecting the home from invasions of privacy); Frisby v. Schultz, 487 U.S. 474, 484-85 (1988)(same)).  Judge Dever then rejected the plaintiffs' analogy to Reed v. Town of Gilbert, concluding that the United States has a substantial interest in collecting debts and so the government-debt exception does not render the TCPA underinclusive with respect to its stated purposes.  See 342 F. Supp. 3d at 745.  Last, Judge Dever concluded that less restrictive telemarketing restrictions would not further the TCPA's compelling interests.  See 342 F. Supp. 3d at 746-47.  Accordingly, Judge Dever held that the government-debt exception does not render the TCPA unconstitutional.  See 342 F. Supp. 3d at 747.

The Fourth Circuit reversed.  See AAPC v. FCC, 923 F.3d at 169.  The Fourth Circuit first concluded that the government-debt exception is content-based, because it conditions the permissibility of a call using prohibited technology on the content of the call.  See 923 F.3d at 176.[4]  The Fourth Circuit then held that the government-debt exception does not satisfy strict scrutiny review:

_____

[4]Both the Fourth Circuit and Judge Dever rejected the United States' argument that the government-debt exception refers to the relationship between the caller and the recipient, and not to the call's content, primarily because the statute permits third parties with no relationship to the

> First, by authorizing many of the intrusive calls that the automated call ban was
> enacted to prohibit, the debt-collection exemption subverts the privacy protections
> underlying the ban. Second, the impact of the exemption deviates from the purpose
> of the automated call ban and, as such, it is an outlier among the other statutory
> exemptions.

923 F.3d at 168.  The Fourth Circuit noted the exception's breadth and considered that nearly

eighty percent of all student-loan debt is owed to or guaranteed by the United States.  See 923 F.3d

at 168.  "Thus, millions of debtors owe debts about which third parties can make otherwise

prohibited calls under the debt-collection exemption.  The exemption is not at all 'narrow' when

it is assessed in that context."  923 F.3d at 168.  Having concluded that the government-debt

exception violates the First Amendment, the Fourth Circuit next considered whether the exception

is severable from the rest of the TCPA.  See 923 F.3d at 171.  Relying on National Federation of

Independent Businesses v. Sebelius, 567 U.S. 519, 587 (2012), the Fourth Circuit asserted that

severance is the "preferred remedy" for an unconstitutional statutory provision, 923 F.3d at 171.

The Fourth Circuit noted that Congress expressly prescribed that, if a TCPA provision is held

unconstitutional, "'the remainder . . . shall not be affected.'"  923 F.3d at 171 (quoting 47 U.S.C.

§ 608).  The Fourth Circuit said that the TCPA's severability provision "creates 'a presumption

that Congress did not intend the validity of the statute in question to depend on the validity of the

constitutionally offensive provision.'"  923 F.3d at 171 (quoting Alaska Airlines, Inc. v. Brock,

480 U.S. 678, 686 (1987)).  The Fourth Circuit thus severed the government-debt exception,

leaving the rest of the TCPA intact.  See 923 F.3d at 172.[5]

---

recipient to call on the United States' behalf regarding debts that the recipient owes to the United
States or regarding debts that the United States guarantees.  See AAPC v. FCC, 923 F.3d at 167;
AAPC v. Session, 323 F. Supp. 3d at 743.
    [5]The Ninth Circuit reached a similar conclusion in Duguid v. Facebook, Inc.  In that case,
the Ninth Circuit concluded that the government-debt exception is a content-based speech

The United States then petitioned the Supreme Court to determine the government-debt exception's constitutionality, and the United States presented the following question: "Whether the government-debt exception to the TCPA's automated-call restriction violates the First Amendment, and whether the proper remedy for any constitutional violation is to sever the exception from the remainder of the statute."  Petition for Certiorari, 2019 WL 6115075, at *1. AAPC also submitted a brief supporting certiorari.  See Brief of Respondents in Support of Cert., 2019 WL 6609436, at *2.  On January 20, 2020, the Supreme Court granted certiorari to determine: "Whether the government-debt exception to the TCPA's automated-call restriction violates the First Amendment, and whether the proper remedy for any constitutional violation is to sever the exception from the remainder of the statute."  Brief of Petitioners, Barr v. AAPC, 140 S. Ct. 812 (No. 19-631), 2020 WL 1062397, at *1 (Feb. 24, 2019).  The case was argued before the Supreme Court on May 6, 2020.

## LAW REGARDING STAYS

---

restriction.  See 926 F.3d at 1154.  Also applying strict scrutiny, the Ninth Circuit concluded that the government-debt exception is underinclusive, because it permits telephone calls that are "every bit as invasive of residential and personal privacy as any other automated call."  926 F.3d at 1155. The Ninth Circuit then concluded that the government-debt exception is also overinclusive, because Congress "could have accomplished the same goal in a content-neutral manner by basing the exception on the called party's preexisting relationship with the federal government."  926 F.3d at 1156.  Relevant to the Defendants' argument here, however, the Ninth Circuit stated that "the TCPA's potentially expansive application to everyday consumer communications -- a small fraction of which implicate residential and personal privacy -- further emphasizes its over-inclusiveness."  926 F.3d at 1156.  The Ninth Circuit concluded, however, that the government-debt exception is severable, partly because Congress explicitly stated its intent that any unconstitutional provision in the TCPA be severed.  See 926 F.3d at 1156.  The Ninth Circuit's primary reason for severing the government-debt exception, however, is that courts have long held the pre-amendment TCPA constitutional, and the "newly enacted exception did not suddenly and silently become so integral to the TCPA that the statute could not function without it."  926 F.3d at 1157.

A court has broad discretion in managing its docket, which includes decisions regarding issuing stays for all or part of a proceeding.  See Clinton v. Jones, 520 U.S. 681, 706 (1997)("The District Court has broad discretion to stay proceedings as an incident to its power to control its own docket." (citing Landis v. N. Am. Co., 299 U.S. 248, 254 (1936))).

> [T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants.  How this can best be done calls for the exercise of judgment, which must weigh competing interests and maintain an even balance.

Landis v. N. Am. Co., 299 U.S. at 254-55.  Recognizing that district courts must exercise moderation in issuing stays, the Supreme Court has noted that there are no strict rules for the district court to apply, because "[s]uch a formula . . . is too mechanical and narrow."  Landis v. N. Am. Co., 299 U.S. at 255.

The party seeking a stay generally faces a difficult burden.  See Clinton v. Jones, 520 U.S. at 708 ("The proponent of a stay bears the burden of establishing its need."); S2 Automation LLC v. Micron Tech., Inc., No. CIV 11-0884 JB/WDS, 2012 WL 3150412, at *2 (D.N.M. July 23, 2012)(Browning, J.)(citing Commodity Futures Trading Comm'n v. Chilcott Portfolio Mgmt., Inc., 713 F.2d 1477, 1484 (10th Cir. 1983)).  "In particular, where a movant seeks relief that would delay court proceedings by other litigants he must make a strong showing of necessity because the relief would severely affect the rights of others."  Commodity Futures Trading Comm'n v. Chilcott Portfolio Mgmt., Inc., 713 F.2d at 1484.  "The underlying principle clearly is that 'the right to proceed in court should not be denied except under the most extreme circumstances.'"  Commodity Futures Trading Comm'n v. Chilcott Portfolio Mgmt., Inc., 713 F.2d at 1484 (alterations omitted)(quoting Klein v. Adams & Peck, 436 F.2d 337, 339 (2d Cir. 1971)).

The Tenth Circuit has acknowledged a district court's discretion in issuing discovery stays. In Cole v. Ruidoso Mun. Sch., 43 F.3d 1373 (10th Cir. 1994), the defendants argued "that they had an absolute right to a stay of discovery" after they filed a motion for qualified immunity, and appealed to the Tenth Circuit because the district court imposed conditions on the stay.  43 F.3d at 1386.  The Tenth Circuit rebuffed the strict rules that the defendants suggested:

> As a general rule, discovery rulings are within the broad discretion of the trial court.  The trial court's decision on discovery matters will not be disturbed unless the appellate court has a definite and firm conviction that the lower court made a clear error of judgment or exceeded the bounds of permissible choice in the circumstances.

43 F.3d at 1386.

Whether to issue a discovery stay depends greatly on the facts and progress in each case. In S2 Automation LLC v. Micron Tech., Inc., the Court granted in part and denied in part the motion to stay discovery, extend pretrial deadlines, vacate trial setting and for protective order. See 2012 WL 3150387, at *1.  The Court denied the motion to the extent it requested a discovery stay, because "[u]ltimately, a stay is unnecessary."  2012 WL 3150387, at *3.  The parties had made "significant progress on the disputed matters," and the Court had "issued rulings on many of the motions that Micron Technology contended needed to be resolved before the case proceeded."  S2 Automation LLC v. Micron Tech., Inc., 2012 WL 3150387, at *3.  Instead of granting the discovery stay, the Court extended deadlines that it had previously set in the case based on the case's increasing complexity.  See S2 Automation LLC v. Micron Tech., Inc., 2012 WL 3150387, at *3.  In Walker v. THI of N.M. at Hobbs Ctr., No. CIV 09-0060 JB/KBM, 2011 WL 2728326 (D.N.M. June 28, 2011)(Browning, J.), the Court evaluated whether to stay deposition discovery until thirty days after it ruled on the motions to dismiss two of the defendants,

which would determine whether those defendants would remain in the suit and participate in discovery.  See 2011 WL 2728326, at *1.  The plaintiffs argued that the Court had already extended discovery deadlines and that issuing a stay would require rescheduling deadlines.  See 2011 WL 2728326, at *1.  The Court denied the motion to stay, because it did "not see a benefit to staying discovery."  2011 WL 2728326, at *2.  The Court noted that counsel for the two defendants who were subject to the motions to dismiss had already indicated that they would not participate in deposition discovery.  See 2011 WL 2728326, at *2.  "There is thus no benefit to staying deposition discovery, and staying deposition discovery would further delay the case."  2011 WL 2728326, at *2.

## ANALYSIS

The Court denies the Motion.  Because the decision to stay proceedings lies within the district court's discretion, there does not appear to be a prevailing test specific to stay requests pending Supreme Court resolution of a separate case.  Accordingly, the Court first evaluates the Motion under the framework it has used in previous, similar cases, and the rules that the caselaw typically provides.  Under this framework, a stay is not appropriate.  The Court then evaluates the Motion under the framework that the Defendant propose and concludes that a stay is not appropriate.

## I.    A STAY IS NOT APPROPRIATE, BECAUSE CHILDRESS OPPOSES THE STAY AND A STAY WILL PREJUDICE CHILDRESS.

As a general rule, "discovery rulings are within the broad discretion of the trial court." Cole v. Ruidoso Mun. Sch., 43 F.3d at 1386.  This discretion includes the ability to stay all or part of a proceeding "as an incident to [a court's] power to control its own docket."  Landis v. N. Am. Co., 299 U.S. at 254.  The Tenth Circuit has cautioned, however, that "[t]he right to proceed in

court should not be denied except under the most extreme circumstances." Commodity Futures Trading Comm'n v. Chilcott Portfolio Mgmt., Inc., 713 F.2d at 1484 (internal quotation marks and citation omitted). Indeed, the Defendants "must make a strong showing of necessity because the relief would severely affect the rights of others." Commodity Futures Trading Comm'n v. Chilcott Portfolio Mgmt., Inc., 713 F.2d at 1484. Defendants particularly struggle "where there are a relatively small number of factual issues, the plaintiff's discovery requests are not particularly burdensome, and the defendant has not shown how it will suffer prejudice from them[.]" Fabara v. GoFit, LLC, 2015 WL 3544296, at *11.

As a preliminary matter, the Court generally hesitates to stay discovery unless both parties agree to the stay, see Fabara v. GoFit, LLC, 2015 WL 3544296, at *11 (denying a discovery stay when the defendant filed a motion to dismiss arguing lack of personal jurisdiction, because the parties could employ the discovery in a state action); Walker v. THI of N.M. at Hobbs Ctr., 2011 WL 2728326, at *2 (denying a discovery stay pending a motion to dismiss when the stay would delay the case, and staying discovery provided no benefit), and the Court will not stay discovery where such a stay will prejudice the plaintiff, see Sizova v. Nat'l Inst. of Standards & Tech., 282 F.3d at 1326 ("[R]efusal to grant discovery constitutes an abuse of discretion if the denial results in prejudice to a litigant." (citing First City, Tex.-Houston, N.A. v. Rafidain Bank, 150 F.3d 172, 176-77 (2d Cir. 1998); Filus v. Lot Polish Airlines, 907 F.2d 1328, 1332 (2d Cir. 1990); Majd-Pour v. Georgiana Cmty. Hosp., Inc., 724 F.2d 901, 903 (11th Cir. 1984); Canavan v. Beneficial Fin. Corp., 553 F.2d 860, 865 (3d Cir. 1977))). See Commodity Futures Trading Comm'fn v. Chilcott Portfolio Mgmt., Inc., 713 F.2d at 1484 ("[T]he right to proceed in court should not be denied except under the most extreme circumstances." (internal quotation marks and

omitted)(quoting <u>Klein v. Adams & Peck</u>, 436 F.2d at 339)); <u>Fed. Deposit Ins. Corp. v. Dee</u>, 222 F. Supp. 3d 972, 1024-26 (D.N.M. 2016)(Browning, J.)("[W]here a movant seeks relief that would delay court proceedings by other litigants he must make a strong showing of necessity because the relief would severely affect the rights of others." (quoting <u>Commodity Futures Trading Comm'n v. Chilcott Portfolio Mgmt., Inc.</u>, 713 F.2d at 1484)).

Here, Childress opposes a stay and asserts that a stay will prejudice, perhaps irreparably, her ability to prosecute her claims against the Defendants. <u>See</u> Response at 12-13. Childress avers that third parties such as telephone service providers typically dispose their records every thirty to ninety days. <u>See</u> Response at 12. Although the Defendants contend that Childress' assertions are baseless, Childress attaches to the Response a data retention policy from RingCentral -- which Childress contends may have relevant call records -- which provides that RingCentral "deletes or de-identifies all data from a customer's account within 30-45 days of account closure." RingCentral Data Request Guidelines at 4, filed April 16, 2020 (Doc. 21-4). RingCentral's policy also provides, however, that it will preserve records for ninety days in response to a data-preservation request. <u>See</u> RingCentral Data Request Guidelines at 2. Childress avers that she has submitted such a request to RingCentral. <u>See</u> Response at 12. Childress nonetheless asserts, based on "experience," that other providers have similar policies, but that Childress is presently unable to identify to whom she should submit preservation requests without further discovery from the Defendants. Response at 12. <u>See id.</u> at 13. Accordingly, a stay may prejudice Childress' ability to build a full record to support her claims against the Defendants. <u>See Walker v. THI of N.M. at Hobbs Ctr.</u>, 2011 WL 2728326, at *2 (denying a defendant's discovery request where doing so could foreclose permanently the plaintiff's access to relevant information).

## II.     THE DEFENDANTS' ASSERTED RATIONALES DO NOT OVERCOME THE <u>PRESUMPTION AGAINST STAYS</u>.

The Defendants also contend that a stay is warranted, because Childress has submitted discovery requests that are not "proportional to the needs of the case, considering the importance of the issues at stake in the action and the amount in controversy." Motion at 8.  The Federal Rules of Civil Procedure, however, provide means for the Defendants to guard against abusive discovery requests without resorting to a stay.  <u>See</u>, <u>e.g.</u>, Fed. R. Civ. P. 26(c).  This is the appropriate mechanism to contest such a practice.  Rule 26(c) of the Federal Rules of Civil Procedure, for example, provides that, upon a good cause showing, a court may "issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense," which may include forbidding disclosure or discovery.  Fed. R. Civ. P. 26(c)(1)(A).  <u>Accord</u> <u>Miller v. Regents of the Univ. of Colo.</u>, 188 F.3d 518, 1999 WL 506520, at *12 (10th Cir. 1999)(unpublished table opinion)("The district court is in the best position to weigh these variables and determine the appropriate limits because, unlike an appellate court, the district court has the ability to view firsthand the progression of the case, the litigants, and the impact of discovery on parties and nonparties.").  The Defendants thus have tools at their disposal to guard against abusive discovery practice without resorting to a stay.

The Defendants also assert that a stay is warranted, because the Supreme Court should soon issue its opinion in <u>Barr v. AAPC</u>.  <u>See</u> Motion at 10 ("Consider, for example, the limited nature of Defendants' request: the stay would necessarily end with the Supreme Court's opinion in AAPC, a case pending this term.").  That the Supreme Court may soon issue a dispositive opinion cuts both ways, however, because an imminent resolution means that the parties will not spend considerable time or resources before the Supreme Court acts.  Supreme Court cases that are

"argued later in the term," as occurred in <u>Barr v. AAPC</u>, "take significantly less time to decide" than cases argued earlier in the term.  Lee Epstein, William Landes, and Richard Posner, <u>The Best for Last: The Timing of U.S. Supreme Court Decisions</u>, 64 Duke L.J. 991, 1008 (2015).  This factor thus does not unequivocally cut in either side's favor.

Additionally, Courts of Appeals typically disfavor granting stays pending the Supreme Court's resolution of separate cases.  <u>See</u>, <u>e.g.</u>, <u>Arkin v. Innocutis Holdings, LLC</u>, 176 F. Supp. 3d at 1314 ("The Eleventh Circuit disfavors the granting of a stay based on the Supreme Court's grant of certiorari." (citing <u>Gissendaner v. Comm'r, Ga. Dept. of Corrs.</u>, 779 F.3d 1275, 1284 (11th Cir. 2015)(denying motion for stay of execution in § 1983 action due to Supreme Court's grant of certiorari in unrelated death penalty case)); <u>Kelly v. Quarterman</u>, 296 F. App'x 381, 382 (5th Cir. 2008)(per curiam)(unpublished)(declining to stay an execution, because "we are bound by our precedent even after the Supreme Court grants certiorari in another case on the relevant issue").  These courts note that, until the Supreme Court issues a contravening opinion, existing precedent is binding.  <u>See</u> <u>United States v. Lopez-Velasquez</u>, 526 F.3d 804, 808 n.1 (5th Cir. 2008)("Absent an intervening Supreme Court case overruling prior precedent, we remain bound to follow our precedent even when the Supreme Court grants certiorari on an issue."); <u>Schwab v. Sec'y, Dep't of Corrections</u>, 507 F.3d 1297, 1298 (11th Cir. 2007)(vacating district court's stay of execution based on Supreme Court's grant of certiorari, "because grants of certiorari do not themselves change the law").

Moreover, Tenth Circuit has affirmed a district court's decision not to stay discovery pending a determination of a defendant's entitlement to qualified immunity.  <u>See</u> <u>Cole v. Ruidoso Mun. Sch.</u>, 43 F.3d at 1386.  In <u>Cole v. Ruidoso Municipal Schools</u>, the defendants argued "that

they had an absolute right to a stay of discovery" after they filed a motion for qualified immunity

and appealed to the Tenth Circuit because the district court imposed conditions on the stay.  43

F.3d at 1386.  The Tenth Circuit rebuffed the strict rules that the defendants suggested:

> As a general rule, discovery rulings are within the broad discretion of the
> trial court. The trial court's decision on discovery matters will not be disturbed
> unless the appellate court has a definite and firm conviction that the lower court
> made a clear error of judgment or exceeded the bounds of permissible choice in the
> circumstances.

Cole v. Ruidoso Mun. Sch., 43 F.3d at 1386 (citations omitted)(internal quotation marks omitted).

If the Supreme Court's grant of certiorari does not merit a stay of execution or litigation despite a

defendant's potential immunity, its grant of certiorari in Barr v. AAPC does not merit a stay in this

matter.

## III.    **THE CASELAW DOES NOT SUPPORT A STAY**.

There is no a prevailing or predominant approach in cases deciding similar issues.  See

Boise v. ACE USA, Inc., No. 15-CIV-21264, 2015 WL 4077433, at *5 (S.D. Fla. July 6,

2015)(Cooke, J.)(granting a motion to stay pending the Supreme Court's disposition of a case that

"may conclusively determine whether this Court has the subject matter jurisdiction to hear

Plaintiff's claims at all"); Arkin v. Innocutis Holdings, LLC, 176 F. Supp. 3d 1313, 1315 (M.D.

Fla. 2016)(Whittemore, J.)(denying a motion to stay pending the Supreme Court's disposition of

a case, because the district court predicted that the Supreme Court was "is not likely to disturb"

controlling law); Boger v. Citrix Sys., Inc., 2020 WL 1939702, at *2 (staying a TCPA action

pending the Supreme Court's disposition of Barr v. AAPC and the COVID-19 pandemic, because

"a stay in these difficult circumstances thus conserves precious judicial and case resources and

avoids unnecessary expenditure of time and money on discovery for a cause of action that may

ultimately be invalidated"); Lindenbaum v. Realgy, LLC, 2020 WL 1908639, at *2 (same);

Sarmiento-Perez v. Las Colinas Int'l, Inc., No. 3:14-CV-1898-L, 2015 WL 3539571, at *5 (N.D.

Tex. June 5, 2015)(Lindsay, J.)(denying motion to stay pending the Supreme Court's disposition

of a separate case, because the district court predicted that the Supreme Court's decision would

not alter controlling law). This lack of clearly prevailing principles is perhaps attributable to stays'

discretionary nature and dependence on each case's unique facts. See Landis v. N. Am. Co., 299

U.S. at 255 (noting that there are no strict rules for the district court to apply when deciding to

issue a stay, because "[s]uch a formula . . . is too mechanical and narrow"). It appears, however,

that stays are more likely when the Supreme Court's decision could negate or invalidate all of the

plaintiff's case, see Boger v. Citrix Sys., Inc., 2020 WL 1939702, at *2, or remove the court's

subject-matter jurisdiction, see Boise v. ACE USA, Inc., 2015 WL 4077433, at *5.

The Supreme Court's decision in Barr v. AAPC is unlikely to invalidate all of Childress'

claims or remove the Court's subject-matter jurisdiction. Childress advances four claims, only

one of which could be invalidated by Barr v. AAPC. See Complaint ¶¶ 80-91, at 16-17. Childress

asserts one claim for violation of the TCPA's subsection (b) -- the validity of which is currently

being determined at the Supreme Court -- and one claim for violation of the TCPA's subsection

(c) -- the validity of which is not currently pending before the Supreme Court and which has been

previously affirmed by Courts of Apealls. See Complaint ¶ 80-83, at 16; Br. of Petitioners, Barr

v. AAPC, 2020 WL 1062397, at *1; Mainstream Mktg. Servs., Inc. v. F.T.C., 358 F.3d 1228, 1246

(10th Cir. 2004)("[T]he government has asserted substantial interests to be served by the do-not-

call registry (privacy and consumer protection), the do-not-call registry will directly advance those

interests by banning a substantial amount of unwanted telemarketing calls, and the regulation is

narrowly tailored because its opt-in feature ensures that it does not restrict any speech directed at

a willing listener."). Childress also asserts a common-law claim for trespass to chattels and a claim

under the NMUPA.  See Complaint ¶¶ 84-91, at 16-17.  Although time will tell whether the

Defendants' contention that Childress' subsection (b) claim is "primary," Reply at 5, the Supreme

Court's decision in Barr v. AAPC is thus unlikely to dispose of Childress' case.[6]

---

[6]A primary issue before the Supreme Court is whether the government-debt exception is
severable.  The Defendants note that the question presented appears to touch more broadly on the
issue of severability, rather than specifically whether the government-debt exception is severable.
See Reply at 3 (quoting Petition for Writ of Certiorari, Barr v. AAPC, 2019 WL 6115075, at *1
("'Whether the government-debt exception to the TCPA's automated-call restriction violates the
First Amendment, and whether the proper remedy for any constitutional violation is to sever the
exception from the remainder of the statute.'")).  Severance is the typical remedy for statutory
provisions that violate the Constitution: "[T]he presumption is in favor of severability."  Regan v.
Time, Inc., 468 U.S. 641, 653 (1984).  A statute's severability is primarily a question of legislative
intent.  "Unless it is evident that the Legislature would not have enacted those provisions which
are within its power, independently of that which is not, the invalid part may be dropped if what
is left is fully operative as a law." Buckley v. Valeo, 424 U.S. 1, 108 (1976).  A severability clause
in the statute "creates a presumption that Congress did not intend the validity of the statute in
question to depend on the validity of the constitutionally offensive provision."  Alaska Airlines,
Inc. v. Brock, 480 U.S. at 686.  The Communications Act of 1934 -- of which the TCPA is part --
provides that, when any Communications Act provision is "held invalid," "the remainder" of the
statute "shall not be affected."  47 U.S.C. § 608.

The Defendants assert, however, that "Supreme Court precedent firmly establishes that
when a content-based restriction on speech violates the First Amendment, the proper remedy is to
invalidate the restriction, not sever the speech permitting exception."  Reply at 3 (citing Reed v.
Town of Gilbert, 576 U.S. at 173-74).  The question is thus whether the typical presumption
favoring severability does not apply to content-based speech restrictions.

The respondents AAPC's main argument is that severance will result in a TCPA that
restricts more speech, and that the Court always should fashion remedies in a manner that
maximizes permissible speech.  See Brief for Respondent, Barr v. AAPC, No. 16-931, 2020 WL
1478621, at *40 (Dec. 4, 2019).  The AAPC asserts that full invalidation of the TCPA's automated-
call restriction "follows directly from the constitutional text," because the automated-call
restriction, and not the exception, "'abridg[es] the freedom of speech.'"  Brief for Respondent,
Barr v. AAPC, 2020 WL 1478621, at *35 (quoting U.S. Const. amend. I).  The AAPC argues that,
by adding the government-debt exception, Congress undermined the entire TCPA, because the
amendment contradicts Congress' stated interest in protecting privacy.  See Brief for Respondent,
2020 WL 1478621, at *27.  The AAPC thus contends that the government-debt restriction reveals
that the pre-amendment AAPC is overinclusive, because the exception demonstrates that Congress

did not narrowly tailor the automated-call restriction.  See Brief for Respondent, Barr v. AAPC, 2020 WL 1478621, at *37.  The AAPC further asserts that, "[b]ecause the First Amendment protects against unjustified speech restrictions, a violation can never be remedied by invalidating exceptions to those restrictions."  Brief for Respondent, Barr v. AAPC, 2020 WL 1478621, at *35.  The AAPC also makes a practical argument that severance will discourage plaintiffs from challenging statutes on First Amendment grounds, because "no plaintiff will ever endure the effort and expense of challenging a content-based speech restriction if the remedy in such cases is to leave the restriction intact -- and only to invalidate the exceptions."  Brief for Respondent, 2020 WL 1478621, at *37.  Additionally, the AAPC avers that severance creates separation-of-powers problems, because it requires courts to exercise legislative functions by rewriting statutes.  See Brief for Respondent, 2020 WL 1478621, at *38.

The petitioner, William Barr, Attorney General of the United States, responds that the pre-amendment automated-call ban was constitutional, and so Congress could validly repeal the government-debt exception, leaving a constitutional statutory scheme.  See Pet. Reply Br., Barr v. AAPC, No. 19-631, 2020 WL 2041669, at *16.  The Attorney General accordingly contends that, because Congress expressed its intent to leave the TCPA intact if one its provisions is unconstitutional, the Supreme Court thus should sever the government-debt exception.  See Pet. Reply Br. 2020 WL 2041669, at *16.  The Attorney General further notes that neither of the courts below concluded that the government-debt exception undercuts the credibility of Congress' stated rationale in enacting the TCPA, and so the AAPC's argument that the government-debt exception renders the entire TCPA overinclusive is unavailing.  See Pet. Reply Br., 2020 WL 2041669, at *17-18.

At oral argument, the Justices seemed largely to agree that the government-debt exception is an unconstitutional content-based speech restriction.  See Transcript of Oral Argument at 6:2-3, Barr v. AAPC, (No. 19-631)(Roberts, C.J.)("Oral Arg. Tr.")("I don't see how that gets you out of the content category.); id. at 12:17-22 (Ginsburg, J.)("Counsel, I don't see how you can escape a content-based distinction.  If the content is a debt owed to the government, that's the content of the message, you owe the government for a student loan or whatever, then the call is okay."); id. at 31:19-21 (Kavanaugh, J.)("I think the government-debt exception is almost certainly content-based, at least for me).  Some of the Justices, however, suggested that, although the government-debt exception is content-based, strict scrutiny may not be the applicable level of review.  For example, Justice Kagan asked:

> [W]hy should we care?  You know, even if Congress didn't write this in exactly the right way, why is it that we should care so much as to put strict scrutiny into place?  This doesn't raise any real concerns about government censorship, about the suppression of ideas, about a distorted marketplace of ideas.

Oral Arg. Tr. at 62:3-10 (Kagan, J.).  Nonetheless, there was broad agreement that the government-debt exception, at least, is unconstitutional.  See, e.g., Oral Arg. Tr. at 21:17-18 (Sotomayor, J.)(suggesting that the government-debt exception is an impermissible content-based speech restriction); id. at 31:22-24 (Kavanaugh, J.)(same).

_____

The Justices thus almost uniformly focused on severability.  See, e.g., Oral Arg. Tr. at 42:11-13 (Thomas, J.)("I'd like you to explain . . . why the restriction is the constitutional problem as opposed to the exception.").  Although the Justices focused primarily on severability, the Justices expressed little appetite for invalidating the TCPA in its entirety.  For example, Chief Justice Roberts stated:

> Congress had this law for 25 years and then they added this, you know, pretty discrete exception that created the problem we have today.  It seems pretty obvious that the way they would solve it is [to] get rid of this exception.  It's an extremely popular law.  Nobody wants to get robo-calls on their cell phone.

Oral Arg. Tr. at 14:15-22 (Roberts, C.J.).  Justice Sotomayor similarly asked why the Supreme Court should "be striking down the entire statute . . . .  [I]f the issue is the remedy, shouldn't we let the circuit below decide that question?"  Oral Arg. Tr. at 55:11-19 (Sotomayor, J.).  Justice Alito also said that AAPC's requested relief renders Congressional intent "irrelevant."  Oral Arg. Tr. at 51:9-10 (Alito, J.).  Justice Kavanaugh further asserted that the TCPA "is one of the more popular laws on the books because people don't like robo-calls," which law Justice Kavanaugh characterized as "just common sense."  Oral Arg. Tr. at 69:17-19 (Kavanaugh, J.).  Justice Kavanaugh then asked the AAPC whether it "want[s] to argue against that common sense?"  Oral Arg. Tr. at 69:22-23 (Kavanaugh, J.).

It is difficult to predict Supreme Court outcomes based on the Justices' questions and demeanor at oral argument.  See, e.g., Timothy Johnson et al., The Influence of Oral Arguments on the U.S. Supreme Court, 100 Am. Pol. Sci. Rev. 99, 99 (2006)(noting that "comparatively little is known about how oral argument affects [the] choices [that Justices make]"); T. Rombeck, "Justice Takes Time for Q&A" at 5B, Lawrence Journal-Word, Oct. 30, 2002 (Justice Thomas opining that "I think Justices, 99 percent of the time, have their minds made up when they go to the bench.").  The Court, as a former Supreme Court law clerk, saw oral arguments change at least one Justice's mind.  To the extent that it is possible to make such a prediction, it is widely believed that the Justices direct relatively more questions to the party that ultimately loses.  See, e.g., Lee Epstein, William M. Landes & Richard A. Posner, Inferring the Winning Party in the Supreme Court from the Pattern of Questioning at Oral Argument, 39 J. Legal Stud. 433, 434 (2010)(confirming, by empirical analysis, that a party is more likely to "lose if he is asked more questions than his opponent during oral arguments).  Here, the Justices generally gave the parties similar treatment regarding their questioning.  See generally Oral Arg. Tr. (providing that the parties were questioned similarly).  This predictive method may be inapposite, however, with the Supreme Court's current telephonic oral argument process, in which the Chief Justice calls on each Justice in order of seniority, thus -- in theory, at least -- equally punctuating each party's argument with the Justices' questions.  See Adam Feldman, "Empirical SCOTUS: Changes in Supreme Court oral argument format: The good, the bad and the ugly," SCOTUSblog (May 19, 2020), https://www.scotusblog.com/2020/05/empirical-scotus-changes-in-supreme-court-oral-argument-format-the-good-the-bad-and-the-ugly/.  Instead, it is notable that the Justices expressed broad agreement that the government-debt exception is both unconstitutional and severable.  Similarly, it is axiomatic that, at least in theory, the Supreme Court prefers narrow remedies to sweeping

## IV.     <u>THE DEFENDANTS DO NOT SATISFY THE TEST THAT THEY PROVIDE</u>.

In sum, the Defendants do not satisfy the test that they provide.  The Defendants contend that a stay is appropriate where: (i) the Supreme Court's decision in the separate matter is likely to have a dispositive effect on this case; (ii) judicial economy is best served by waiting on a dispositive decision; (iii) a stay serves the public's interest; and (iv) the balance of hardships weighs in a stay's favor.  <u>See</u> Motion at 5 (citing <u>Schartel v. OneSource Tech., LLC</u>, 2015 WL 7430056, at *1).  First, as discussed, the Court is skeptical that the Supreme Court will invalidate the TCPA's automated-call ban in its entirety.  Although the government-debt exception is likely unconstitutional, the pre-amendment automated-call ban has repeatedly been upheld as consistent with the First Amendment.  <u>See</u>, <u>e.g.</u>, <u>Gomez v. Campbell-Ewald Co.</u>, 768 F.3d 871 (9th Cir. 2014); <u>Maryland v. Universal Elections, Inc.</u>, 729 F.3d at 376; <u>Greenley v. Laborers' Int'l Union of N. Am.</u>, 271 F. Supp. 3d 1128, 1150 (D. Minn. 2017)(Wright, J.); <u>Lozano v. Twentieth Century Fox Film Corp.</u>, 702 F. Supp. 2d 999, 1011 (N.D. Ill. 2010)(St. Eve, J.).  The Supreme Court thus is likely to affirm the Fourth Circuit, leaving each of Childress' claims intact.  Moreover, as discussed, even if the Supreme Court invalidates the automated-call provision, Childress will still

remedies, and to interpret statutes to avoid invalidation on constitutional grounds.  <u>See</u>, <u>e.g.</u>, <u>Nat'l Fed'n of Indep. Bus. v. Sebelius</u>, 567 U.S. 519, 574 (2012)(Roberts, C.J.)(noting that the Supreme Court has "duty to construe a statute to save it, if fairly possible"); <u>Clark v. Martinez</u>, 543 U.S. 371, 382 (2005)("The canon [of constitutional avoidance] is thus a means of giving effect to congressional intent, not of subverting it."); <u>Rust v. Sullivan</u>, 500 U.S. 173, 191 (1991)("This canon is followed out of respect for Congress, which we assume legislates in light of constitutional limitations.").    Accordingly, because the pre-amendment TCPA was uniformly viewed as constitutional, and because Congress clearly expressed a preference for severability in the TCPA, the Court predicts that the Supreme Court's opinion in <u>Barr v. AAPC</u> will have no bearing on the viability of Childress' claims.

maintain three other claims, including one TCPA claim based on § 227(c).[7]  See Complaint ¶¶ 81-94, at 13.

Second, a stay will minimally serve judicial economy.  Because it is unlikely that the Supreme Court will invalidate the entire TCPA, and because, even if the Supreme Court does so, the Court will still retain jurisdiction after the Supreme Court issues its opinion in Barr v. AAPC, a stay will, at best, only procrastinate the Court's work.  Because judicial economy should "rarely, if ever lead to . . . curtailment of the access to the courts," this factor does not support the Defendants' requested relief.  Commodity Futures Trading Comm'n v. Chilcott Portfolio Mgmt., Inc., 713 F.2d 1477, 1485 (10th Cir. 1983).  Third, a stay minimally would serve the public's interest.  Although there is strong public interest in not enforcing unconstitutional laws, see Elrod v. Burns, 427 U.S. 347, 373 (1976)("The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury."), denying a stay will not result in enforcement of an unconstitutional statute, but rather will allow discovery, including on Childress' other claims whose constitutionality is not in dispute.  Alternatively, there is strong public interest in not hindering litigants' access to the courts for redress: "The underlying principle clearly is that 'the right to proceed in court should not be denied except under the most extreme circumstances.'" Commodity Futures Trading Comm'n v. Chilcott Portfolio Mgmt., Inc., 713 F.2d at 1484 (alterations omitted)(quoting Klein v. Adams & Peck, 436 F.2d 337, 339 (2d Cir. 1971)).

---

[7]Although the Defendants removed this case to federal court by invoking federal-question jurisdiction, see Notice of Removal ¶ 11, at 3-4, filed February 17, 2020 (Doc. 1), the Court asked the Defendants at a hearing on June 3, 2020, to disclose the residencies of the Defendants' principals to determine whether the Court also has diversity jurisdiction, see Clerk's Minutes at 1, filed June 3, 2020 (Doc. 29).  The Court awaits this disclosure.

Finally, the balance of hardships weighs in Childress' favor.  A stay may save the Defendants from presently engaging in discovery while the parties await the Supreme Court's opinion in Barr v. AAPC, but Childress plausibly asserts that a stay may render certain third-party discovery more difficult and, perhaps, impossible.  See Response at 5.  Further, discovery is inevitable regardless the outcome in Barr v. AAPC, because Childress' three other claims will remain even if the Supreme Court grants AAPC its requested relief.  See Elliott Indus. Ltd. P'ship v. Conoco Inc., No. CIV 00-0655 JC/WWD, 2001 WL 37121338, at *2 (D.N.M. Oct. 29, 2001)(Conway, J.)(denying motion to stay when the defendants would inevitably have to engage in discovery).  Accordingly, a stay on the one hand allows the Defendants to forego discovery with which they will almost certainly have to engage regardless of the result in Barr v. AAPC, while on the other hand a stay will impose permanent hardships on Childress' ability to prosecute her case. The balance of hardships thus weighs in Childress' favor.  Because the Court concludes that the Supreme Court's grant of certiorari in Barr v. AAPC does not constitute a compelling reason to stay these proceedings, the Court denies the Motion.

**IT IS ORDERED** that the Defendants' Joint Motion to Stay Case and Brief in Support, filed April 6, 2020 (Doc. 15), is denied.

_____
UNITED STATES DISTRICT JUDGE

*Counsel:*

Sid Childress
Sid Childress, Lawyer
Santa Fe, New Mexico

  *Attorney for the Plaintiff*

Greg Biehler
Lewis Brisbois Bisgaard & Smith, LLP
Albuquerque, New Mexico

--and--

Allison M. Scott
Ashley R. Fickel
Dykema Gossett LLP
Los Angeles, California

*Attorneys for the Defendants*